762 F.2d 1014
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BETTY WILLIS PLAINTIFF-APPELLANT,
v.
MARGARET HECKLER, SECRETARY OF HEALTH AND HUMAN SERVICES,
DEFENDANT-APPELLEE.
 NO. 84-3477
 United States Court of Appeals, Sixth Circuit.
 4/30/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO
 Before: CONTIE and MILBURN, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Betty Willis appeals the district court's judgment upholding the Secretary's determination that Willis is not entitled to disability benefits.
 
 
 2
 Willis was born on December 26, 1932 and has a tenth grade education. She last worked on July 4, 1979. Her application for benefits, filed on December 12, 1979, alleged an onset date of July 1978. After a hearing, an Administrative Law Judge determined that Willis was not disabled before December 31, 1978, the date the ALJ believed Willis' insured status had expired. The Appeals Council determined, however, that Willis' insured status extended to June 30, 1980. The case was remanded to the ALJ to determine whether Willis was disabled before June 30, 1980. A second hearing was held on December 22, 1981, after which the ALJ ruled that Willis was not disabled during the relevant time period. The Appeals Council upheld this decision and Willis filed this action in the district court.
 
 
 3
 In January of 1978, Willis was hospitalized at Christ Hospital, complaining of abdominal pain. Following a laparotomy, Willis was diagnosed as having a pelvic inflamatory disease. See App. at 193, 208. She was released following the surgical procedure and medication with antibiotics. Willis 'made a satisfactory progress and [an] uneventful recovery.' Id. at 193.
 
 
 4
 Willis was in Bethesda Hospital from January 29, 1979 to February 8, 1979. At this time, Willis complained of chest pains. Id. at 227. The impression upon admission was chest pain of an undetermined origin and anxiety neurosis. Id. Upon discharge, 'the patient felt better . . . and there was no evidence of cardiac problems.' Id. at 228. A psychiatric consultation revealed, however, a diagnosis of reactive depression. Id. The final diagnosis upon discharge was '[c]hest pain secondary to reactive depression,' '[h]ypertensive heart disease,' 'obesity,' '[g]laucoma' and '[c]hronic cholecystitis.' Id.[1]
 
 
 5
 From August 7, 1979 to August 23, 1979, Willis was hospitalized at the Deaconess Hospital. Willis complained of chest and abdominal pain. Id. at 238. X-rays revealed 'moderate cardiac enlargement with mild pulmonary congestion but very little interval change' id. The report concluded that 'laboratory data suggests chronic cholecystitis with acute attacks but the patient is a poor risk for surgery with all the cardiovascular problems that she has, to it was planned to wait until she looses some weight and until her hypertension and congestive heart failure is under control.' Id. The final diagnosis was of cornary artery disease, congestive heart failure, hypertension, chronic cholecystitis and cholelithiasis and anxiety neurosis. Id.
 
 
 6
 Dr. Hans examined Willis' eyes. He reported that he first saw Willis on October 3, 1978. At that time Willis had 'very advanced glaucoma in the left eye' and less serious glaucoma in the right eye. Id. at 252. Hans reported that on December 4, 1979, Willis' corrected vision was measured at 20/80 in her right eye and 20/30 in her left eye. Id. Willis also had an extremely narrow field of vision in her right eye and it was 'questionable whether the patient will be able to maintain the extremely tiny field of vision which remains in the right eye.' Id.
 
 
 7
 Willis was again in the Deaconess Hospital in early 1980, again complaining of abdominal pain. Id. at 255. A chest examination revealed 'borderline heart enlargement' but '[n]o active pulmonary disease.' Id. at 258. The final diagnosis was agenesis of the gallbladder, adhesions, hypertension and chronic anxiety. Id. at 254.[2]
 
 
 8
 On February 22, 1980, Dr. Robbins conducted a consultative eye examination on Willis. See id. at 269-70. Robbins noted that Willis is 'legally blind' in her right eye. Id. at 270. Her best correct vision was 20/400 in her right eye and 20/40 in her left eye. Id. at 260. Although Willis had a 'marked restriction' in the field of vision for her right eye, the field of vision for her left eye was normal. Id. at 270.
 
 
 9
 Dr. Reddy is Willis' treating physician. On January 8, 1980, Dr. Reddy submitted a report to the state disability determination service. The report stated a diagnosis of hypertension, congestive heart failure, chronic abdominal pain and anxiety. Id. at 268. Dr. Reddy also completed a physical capacities evaluation form on December 2, 1980. Dr. Reddy indicated that in one eight hour work day Willis can sit for periods of up to four hours, stand for periods of up to two hours and walk for periods of up to two hours. Id. at 274. Dr. Reddy reported that Willis was capable of occasionally lifting and carrying up to twenty pounds. Id. Finally, Dr. Reddy reported that Willis had a total restriction in working around unprotected heights, moving machinery, environments with marked changes in temperature and humidity or exposure to dust and fumes, and in driving automotive equipment. Id. Dr. Reddy's ultimate conclusion was that 'I don't think she will be able to work in the future.' Id.
 
 
 10
 Dr. Longshore conducted a consultative examination. Longshore also completed a physical capacities evaluation form. He concluded that in one eight hour work day Willis can sit for up to three hours, stand for up to three hours and walk for up to three hours. Id. at 288. According to Dr. Longshore, Willis can occasionally lift and carry up to fifty pounds frequently lift and carry up to twenty pounds and continuously lift and carry up to ten pounds. Longshore found no restriction whatsoever in Willis' use of her hands and feet for grasping, pushing, pulling and manipulating. In direct contrast to Dr. Reddy, Dr. Longshore concluded that Willis had absolutely no restriction in working around unprotected heights or moving machinery, exposure to marked changes in temperature and humidity, driving automotive equipment or exposure to dust and fumes. Id. Dr. Longshore concluded:
 
 
 11
 With reference to her functional limitations, she can stand, she can sit, she can certainly bend. She is able to manipulate her arms and fingers very well. She does have trouble stooping over to put her shoes on; however, when she flexed at the waist to examine her back she offered no complaints of any kind in her abdomen or any other place. She can get around from place to place and that she walks back and forth, climbed up on my examining table and back off again and into the chair, so I am sure that she could use public transportation. She has poor visual acuity.
 
 
 12
 With reference to the claimant's physical capacity to perform sedentary etc. work she physically is able to perform sedentary work using her arms, shoulders and hands, and I would suspect light work also, but I doubt any strenuous activity on a sustained basis, mainly on the basis of her obesity.
 
 
 13
 Id. at 277.
 
 
 14
 Willis testified at the hearings. She outlined the history of her maladies and testified to problems caused by chest and abdominal pain and her poor vision. Her daughter also testified and generally corroborated Willis' testimony.
 
 
 15
 Finally, a vocational expert testified at the hearing. He was first asked a hypothetical question which assumed that all of Willis' complaints of pain were true. He indicated that 'under that assumption, it would be my opinion that Mrs. Willis is unemployable. That there are no positions in the general economy that she could perform.' The ALJ then asked the vocational expert a second hypothetical which assumed that Willis' 'primary disabling impairment' is glaucoma rendering her blind in the right eye but with 20/40 vision in the left eye. Id. at 131. The vocational expert testified that there were several different types of jobs readily available in the immediate region which a person with those disabilities could perform. Id. at 131-32. The ALJ relied upon the vocational expert's response to the second hypothetical in concluding that Willis is not disabled.
 
 
 16
 This court's review is, of course, limited to determining whether substantial evidence on the record as a whole supports the Secretary's decision. Richardson v. Perales, 402 U.S. 389 (1971); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. Perales, 402 U.S. at 401; Futernick v. Richardson, 484 F.2d 647, 648 (6th Cir. 1973) (per curiam). This court neither weighs the evidence de novo nor substitutes its judgment for that of the Secretary. O'Banner v. Secretary of Health, Education and Welfare, 587 F.2d 321, 323 (6th Cir. 1978); Futernick, 484 F.2d at 649; Myers v. Richardson, 471 F.2d 1265, 1267 (6th Cir. 1972). It is for the ALJ and not this court to resolve conflicting medical evidence. McDowell v. Richardson, 439 F.2d 995, 997 (6th Cir. 1971) (per curiam).
 
 
 17
 Willis raises a number of issues to support her ultimate argument that the decision of the Secretary was not supported by substantial evidence. First, Willis argues that the district court erred in rejecting Dr. Reddy's opinion that Willis was disabled on the ground that the report was submitted approximately six months after the expiration of Willis' insured status while at the same time not rejecting the ALJ's reliance on the report of Dr. Longshore, which was submitted approximately sixteen months after the expiration of insured status. While it is true that the district court did reject Dr. Reddy's opinion partly because it was submitted after the expiration of Willis' insured status, the district court also discounted Dr. Reddy's opinion of total disability on the ground that this conclusion conflicted with the specific findings on the physical capacities evaluation form. This latter ground constitutes a valid reason for discrediting Dr. Reddy's ultimate conclusion. Moreover, the question of whether the district court erred in evaluating Dr. Reddy's report has little relevance to this case. The question before this court is whether the Secretary's decision is supported by substantial evidence. The ALJ did not purport to reject Dr. Reddy's opinion on the ground that it was submitted after the expiration of insured status. See App. at 13. Rather, the ALJ noted that Dr. Reddy's opinion was not controlling under the following regulation:
 
 
 18
 We are responsible for determining whether you are disabled. Therefore, a statement by your physician that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are 'disabled.'
 
 
 19
 20 C.F.R. Sec. 404.1527. We conclude that the ALJ did not err in rejecting Dr. Reddy's ultimate conclusion that Willis is disabled because Dr. Reddy's specific findings on the physical capacities evaluation form, considered in light of the vocational expert's testimony, indicated that Reddy was not disabled.
 
 
 20
 Second, Willis argues that she is incapable of performing sedentary work because Dr. Longshore's report indicated that she could sit for no more than three hours at a time and Dr. Reddy's report similarly indicated that she could sit for no more than four hours at a time. Willis argues that the ability to engage in sedentary work necessarily includes the ability to sit for prolonged periods of time and the ALJ's conclusion that she is capable of engaging in sedentary work is therefore not supported by substantial evidence.
 
 
 21
 Willis' legal proposition is correct. This court has recently held that a claimant who must alternate between sitting and standing and cannot sit for prolonged periods of time is incapable of sedentary work. See Wages v. Secretary of Health and Human Services, No. 84-5473, slip op. at 6-8 (6th Cir. February 21, 1985). Similarly, the court in Coleman v. Heckler, 572 F. Supp. 1089 (D. Colo. 1983), held that a claimant who was able to sit for only limited periods of time was incapable of sedentary work. The question of whether Willis can engage in sedentary work, however, would be relevant only were this case to be decided under the grid. Because of Willis' nonexertional impairments, the Secretary relied in part upon thet testimony of a vocational expert. The vocational expert testified that one job which Willis could perform is that of a 'hand packager.' See App. at 131. The vocational expert testified that in performing this job the 'workers are seated but can stand as they desire.' Id. The vocational expert testified that there are 3,700 jobs for hand packagers in Willis' region. The vocational expert also testified that numerous jobs as an 'inspector' existed in the region and that Willis could perform this job. Id. at 132. Again, the vocational expert testified that 'the workers may sit, or stand, as they choose.' id. Accordingly, the fact that Willis may be incapable of standing for more than three hours at a time is irrelevant to this case since the vocational expert identified several jobs that Willis could perform in which she may sit or stand as she chooses.
 
 
 22
 Willis' third and fourth arguments are that the ALJ rejected her testimony concerning her pain without making an express credibility determination and that the hypothetical put to the vocational expert was inaccurate. As to the first argument, we conclude that the ALJ adequately dealt with Willis' pain and made a sufficient record for this court to review this determination. See generally Ramirez v. Secretary of Health, Education and Welfare, 550 F.2d 1286 (1st Cir. 1977). We also reject Willis' argument regarding the hypothetical question. The first hypothetical put to the vocational expert assumed that all of Willis' testimony about her pain was true. The second hypothetical rested on the assumption that Willis' primary limitation arose from her glaucoma and that her pain was not a significant impairment. The ALJ obviously discounted Willis' testimony of pain and concluded that, with medication, it was not a serious impairment. If the ALJ's conclusion that Willis' pain is correct, then it was not erroneous for the ALJ to rely on the second hypothetical.
 
 
 23
 We find no error in the phrasing of the second hypothetical. The opportunity of the ALJ to observe the claimant and determine the credibility of his testimony as to pain should not be lightly discarded. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 539 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). Moreover, 'the notion that special deference is owed to a credibility determination by a trier of fact is deeply imbedded in our law.' Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978). Finally, the ALJ is not required to fully credit a claimant's complaints of pain if there is not an underlying medical basis for it. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). Viewing this record under these standards, we find no basis for disturbing the ALJ's determination as to the severity of Willis' pain. Accordingly, there was no error in the ALJ posing a hypothetical which focused primarily upon glaucoma as Willis' significant impairment.
 
 
 24
 For the reasons stated above, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The medical term 'cholecystitis' refers to an inflamation of the gallbladder. See Dorland's Medical Dictionary (24th ed. 1965)
 
 
 [2]
 Dorland's Medical Dictionary defines 'agenesis' as 'the absence of an organ.' According to Willis' testimony, doctors told her that she was born without a gallbladder. See id. at 105