774 F.2d 1161
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry Baldwin, Plaintiff-Appellant,
v.
Margaret M. Heckler, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 84-3673
 United States Court of Appeals, Sixth Circuit.
 9/24/85
 
 S.D.Ohio
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO
 BEFORE: LIVELY, Chief Judge, WELLFORD, Circuit Judge, and BERTELSMAN*, District Judge.
 PER CURIAM.
 
 
 1
 Appellant Larry Baldwin ('Baldwin') appeals the judgment of the United States District Court for the Southern District of Ohio denying his request that the final decision of the Secretary of Health and Human Services denying plaintiff's application for disability insurance benefits be reversed.
 
 
 2
 Baldwin filed an application for disability insurance benefits on December 14, 1981, alleging that he became disabled on August 31, 1979, at age 29, as a result of congenital cataracts and epilepsy. The application was denied initially and upon reconsideration, and Baldwin requested a de novo hearing before an administrative law judge ('ALJ').
 
 
 3
 On October 21, 1982, represented by counsel, Baldwin appeared and testified, as did his parents, before an ALJ, who found him able to perform his prior relevant work as a janitor and therefore not disabled within the meaning of the Act. That decision became the final decision upon affirmance by the Appeals Council. Baldwin then instituted an action in the district court under 42 U.S.C. Sec. 405(g) for review of the Secretary's decision, and on June 12, 1984, the district court sustained the motion of the Secretary for summary judgment on the record.
 
 
 4
 The medical evidence of record in this case documents acquired aphakia, a result of corrective surgery for congenital cataracts. Baldwin's visual acuity, however, with correction, is reported as 20/30 for the left eye, 20/25 in the right eye, and 20/25 in both eyes. His treating optometrist characterized Baldwin's corrected acuity as 'satisfactory.' A consulting opthamologist reported a best corrected vision in both eyes of 20/30 and commented that, apart from new glasses, no other treatment was recommended. Baldwin has also suffered epileptic seizures since early childhood. His treating neurologist noted following a February 1982 office visit that Baldwin had not experienced any seizures for the previous five to six months, although he did complain of dizziness. Baldwin takes Dilantin and Phenobarb on a daily basis for the epileptic condition. He testified at the administrative hearing that he had not experienced a seizure for more than one year prior to the hearing.
 
 
 5
 In March 1980, Baldwin's psychological evaluation indicated a verbal I.Q. of 84, a performance I.Q. of 76, and a full scale I.Q. of 80 which, according to the examining psychologist, placed Baldwin 'at the bottom of the dull-normal range of intelligence.' Based on Baldwin's performance on the Strong-Campbell Interest Inventory test, the examining psychologist concluded, 'I would guess that custodial work with a bureaucracy . . . would be a good fit for him.'
 
 
 6
 In March 1981, Baldwin was referred for vocational evaluation to Lake Cowan Enterprises, Inc. by the Ohio Rehabilitation Services Commission. Judy Patton, a vocational evaluation specialist, noted that his test scores revealed below average mechanical aptitude and form perception. Ms. Patton also noted that Baldwin was able to follow supervision and finish all assigned tasks, although he voluntarily withdrew from the scheduled four-week program after only one day.
 
 
 7
 Finally, Baldwin underwent a vocational evaluation in September 1982 upon referral by his attorney. Charles W. Loomis, a vocational analyst, reported that he appeared to be immature and dependent upon the evaluators for approval. The report concluded:
 
 
 8
 Results of testing indicate Mr. Baldwin's academic, performance, and clerical skills are exceedingly poor. This bleak picture is further complicated by Larry's social immaturity. Despite Larry's statement that he worked as a janitor for nine years, it was learned that this work was actually a protected placement. Since no significant vocational patterns emerged as a result of testing, coupled with his social immaturity, we must conclude that Larry is not able to work competitively.
 
 
 9
 Baldwin worked for more than nine years as a janitor at Holzer Hospital in Gallipolis, Ohio, quitting the job in 1979 to accompany his mother to a new city. Baldwin testified at the administrative hearing that he performed the same work as other janitors there, except for waxing the floors (because he could not handle the buffing machine used in this task). He stated that his supervisors at Holzer were at times displeased with his performance due to the fact that he made numerous mistakes. Baldwin's father testified at the administrative hearing that he used his influence with a friend to get his son hired at the hospital and that, throughout his son's tenure at Holzer Hospital, he would have been fired on at least three occasions but for the father's intervention with friends in the hospital personnel department. Baldwin's father testified that his son's job at Holzer Hospital was terminated when the hospital hired an outside cleaning company. He also related that he was informed that his son had difficulty running the polishers and various other machines, and that he was told that his son could not keep up with the work that he was hired to do, stating his son 'was trying to do the work but that he wasn't doing the work, that they wanted him to do--that he had difficulty seeing and that he would miss places that needed to be cleaned. He would get behind and the other personnel would chip in to try to help him to keep caught up.'
 
 
 10
 After accompanying his mother to Columbus, Ohio, Baldwin obtained a full-time job on the janitorial staff at Mt. Carmel Hospital. He worked at that job for approximately three months before quitting to return to his home town.
 
 
 11
 The Secretary found, and the district court agreed, that claimant's past work as a janitor was not 'sheltered' in nature. Although Baldwin's father helped him obtain the job at Holzer Hospital and interceded for him on three occasions using his influence to keep Baldwin from being fired, the district court agreed with the Secretary that the evidence did not indicate that the job was sheltered or done under 'special circumstances' as contemplated by 20 C.F.R. Sec. 404.1573(c). Holzer Hospital was concluded not to be a sheltered workshop, since Baldwin's job lasted for nine years, and he performed essentially the same job duties as the other employees in his job classification. In addition, claimant performed similar duties at Mt. Carmel Hospital for three months, and left this later job of his own volition. The district court found that there was no evidence that Baldwin's father procured the Mt. Carmel position for him or that anyone in Baldwin's family interceded on his behalf during the course of his employment there. The district court found, moreover, that there was no evidence that Mt. Carmel Hospital expressed dissatisfaction with the quality of Baldwin's work.
 
 
 12
 The court further concluded that the ALJ acted properly in rejecting the opinion of Charles W. Loomis, the vocational expert, that Baldwin's prior work was sheltered and that he was unable to work competitively. The Secretary rejected Loomis' opinion, finding Loomis' conclusions questionable and not supported by the evidence of record, noting that Loomis did not comment upon Baldwin's ability to do his former type of work and reported that he had only some difficulty following instructions and maintaining concentration.
 
 
 13
 The district court noted that vocational evidence, such as the report from Charles W. Loomis, does not become relevant in the sequential evaluation of disability until it is first determined that claimant suffers a severe impairment. 20 C.F.R. Sec. 404.1520. The court found that Baldwin's physical impairments of epilepsy and congenital cataracts do not prevent the performance of janitorial work. The court referred to the psychologist's finding that Baldwin was fuctioning in the borderline range of social and intellectual functioning, yet could perform janitorial work. The court went further and concluded the ALJ did not err in finding that claimant was able to engage in his former work, even if it were assumed that Baldwin suffers a severe impairment. (There was no finding of severe impairment).
 
 
 14
 This court's review of the decision of the Secretary is limited to a determination of whether the findings are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1983)). Also, substantiality of the evidence must be based upon the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).
 
 
 15
 Baldwin first complains on appeal about the failure of the ALJ and the district court to find that the his work at Holzer Hospital was performed under special circumstances and therefore not indicative of a capacity to perform substantial gainful employment. The district court noted that Social Security regulations take into account work performed under special conditions:
 
 
 16
 Even though the work you are doing takes into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital, it may still show that you have the necessary skills and ability to work at the substantial gainful activity level.
 
 
 17
 20 C.F.R. Sec. 404.1573(c). The court also noted that the ability to engage in substantial gainful activity 'contemplates that the plaintiff can 'as a practical matter compete for, secure, and sustain employment." Woodhead v. Califano, 479 F. Supp. 1084, 1088 (D. Neb. 1979) (quoting Flam v. Califano, 469 F. Supp. 793, 795 (E.D. N.Y. 1979)).
 
 
 18
 Substantial evidence supports the finding of the ALJ that Baldwin performed janitorial duties at Mt. Carmel Hospital similar to those he performed previously at Holzer, that he apparently sought and retained the job on his own, and that the record contains no evidence of dissatisfaction of his supervisors with his work at Mt. Carmel. Such evidence supports a finding of a capacity to perform substantial gainful employment. The finding of the ALJ, affirmed by the district court, that Baldwin's work at Holzer was not sheltered is also supported by his own testimony and the overall length of his employment there, notwithstanding the intercessions of his father.
 
 
 19
 Claimant's only other contention on appeal is that the Secretary should have accorded greater credence to the report of Loomis, the vocational expert. As the ALJ noted, Loomis assumed thta Baldwin's former employment was a 'protected placement' before giving his opinion as to Baldwin's ability to work competitively. Loomis did not evaluate Baldwin's performance to determine whether the could work competitively at a position similar to his former one at Holzer. Moreover, the findings of vocational evaluation specialist Judy Patton, though preliminary in nature, serve to counterbalance the opinion of Loomis.
 
 
 20
 Because substantial evidence supports the ALJ's determinations that neither Baldwin's physical impairments nor his mental impairment prevent the performance of janitorial work, and that he is able to engage in substantial gainful employment, the judgment of the district court is AFFIRMED.
 
 
 
 *
 HONORABLE WILLIAM O. BERTELSMAN, United States District Court for the Eastern District of Kentucky, sitting by designation