William McDOWELL, Plaintiff-Appellant,

v.

Elliott RICHARDSON, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 20617.

United States Court of Appeals, Sixth Circuit.

March 29, 1971.

Morton E. Schneider, Detroit, Mich., for plaintiff-appellant; Kelman, Loria, Downing & Schneider, Morton E. Schneider, Detroit, Mich., on brief.

Robert A. Rosenberg, Detroit, Mich., for defendant-appellee; Ralph B. Guy, U. S. Atty., Harold Hood, Robert A. Rosenberg, Asst. U. S. Attys., Detroit, Mich., on brief.

Before BROOKS and KENT, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

PER CURIAM.

This appeal is from an order of the District Court granting summary judgment in favor of the Secretary in a proceeding to review the denial of disability benefits under the Social Security Act. 42 U.S.C. § 423.

The appellant was born on July 18, 1915, completed nine grades of school, and was more or less regularly employed until 1967. The medical evidence demonstrated, and the Hearing Examiner of the Bureau of Hearings and Appeals, Social Security Administration, assumed for purposes of questioning the vocational expert, produced on the hearings, that the plaintiff-appellant was physically unable to perform the work which he had performed prior to his application for disability benefits. 42 U.S.C.A. §§ 416(i) and 423. There was some conflict in the medical evidence as to the

extent of the disability of the plaintiff-appellant and as to the nature of the disability of the plaintiff-appellant.

The hypothetical question submitted to the vocational expert appears as follows in the record on appeal, pages 67 and 68:

"HEARING EXAMINER: The assumption at that time was that the claimant, that if the Examiner were to find that the claimant can perform only sedentary work, and that this only in an environment not exposing him to atmospheric allergens and pollutants, are the jobs in the claimant's geographical region which he can perform. This letter that the doctor submitted supplements the testimony which you provided at that time.

"DR. HYMAN: I would in supplementation add that it was my understanding that not only environmental allergants, that also the criteria of an unusual quantity of fumes and an unusual amount of oil and grease significant to respiratory conditions and in accordance with those criteria the positions listed in my letter which—are for the most part positions in the machinery and tool manufacturing industries, and they exist in substantial significant numbers in the Detroit area. There are in the manufacture of machinery some 92,000 individuals employed in the Detroit area.

"HEARING EXAMINER: In what line?

"DR. HYMAN: In machinery manufacture. In the manufacture of electrical equipment some 38,000, and in transportation equipment, including motor vehicles, over 250,000. These would include also the positions of sorter, engraver, machines and lock assembler which in my letter I specified as in any industry or in the engraving or hardware industry. Simply as a matter of specific designation they are found also on the general machinery and electrical manufacturing industries. The positions then that I —if you—I don't have specific infor-

mation relative to each type of position. They change their incidence dependent upon what they are called in a given employment situation and it is impossible to know if a given job is known by the same title in every employer's records."

After rather extensive examination, including adding of further issues to the hypothetical question, the following colloquy took place, pages 77 and 78 of the record:

"Q. It would have a lot to do, would it not, with the product they are making?

A. And the material experience of the plant involved.

Q. So there could be a greater variance in this?

A. Yes, it is also my observation that these are not the cleanest places in the world, which I say negatively, they are dirty industrial manufacturing plants and they certainly, I would not say for example referring to my previous testimony, that an assembler works in the same condition as a guard or a car rental clerk. Now what the specific situation is, is so variable I may want to provide a generalization.

Q. Most of these things that you have cited in today's testimony involve machinery, they do involve oil and grease, but it is your feeling that it does not add up to the assumption made of being unusual quantity of atmospheric allergent and pollutants, that's a subjective evaluation?

A. Right.

Q. That's a subjective evaluation?

A. That I made, understanding the Examiner's assumption.

Q. Now, last of all, adding a few other assumptions to the assumptions that you have have been given so far, including the original ones, the fact that the nervous condition had resulted in the tremor, adding that the claimant's testimony that he believes he cannot walk or stand for considera-

ble periods of time, has trouble sitting in one place without getting up, can't walk very far, has to rest periodically, adding these assumptions and qualifications to the hypothetical, would any of these jobs be available to him under these circumstances

HEARING EXAMINER: You mean could he perform any of these jobs.

Q. Thank you, could he perform any of these jobs?

A. I have to equivocate, he could perform the work, whether he could hold the job is another issue altogether. He might be able to put in 15 minutes doing the work, but whether or not this would be sufficient to hold the job is another issue.

Q. When I say perform the work, I mean at least seven or eight hours a day on the job.

A. Under those conditions, no."

It should be noted that the additional assumptions included in the hypothetical questioning by counsel for the plaintiff-appellant are fully sustained by the evidence.

■ We recognize that judicial review on decisions of the Secretary is limited. 42 U.S.C. § 405(g); Rose v. Cohen, 406 F.2d 753 (6th Cir., 1969). Courts may not resolve conflicts in the evidence and decide questions of credibility. Moon v. Celebreeze, 340 F.2d 926 (7th Cir., 1965). We recognize that in order to be compensable under the 1967 Amendments to the Act, the physical impairment must result from abnormalities which are "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3) (1964 ed. Supp. III).

■ The impairments from which the plaintiff-appellant is alleged to have suffered, and from which he is alleged to be suffering are by the record demonstrable by medically acceptable clinical and laboratory diagnostic techniques. No question is raised and no question has been raised as to the plaintiff-appellant's motivation to work. There is no suggestion of malingering on the part of plaintiff-appellant. The only issue that we find is as to his ability to perform work in the manner suggested by the vocational expert, Breaux v. Finch, 421 F. 2d 687 (5th Cir., 1970), and since the vocational expert concluded his testimony with the following, page 78 of the record:

"Q. Thank you, could he perform any of these jobs?

A. I have to equivocate, he could perform the work, whether he could hold the job is another issue altogether. He might be able to put in 15 minutes doing the work, but whether or not this would be sufficient to hold the job is another issue.

Q. When I say perform the work, I mean at least seven or eight hours a day on the job.

A. Under those conditions, no."

We are forced to the conclusion that the decision of the Secretary was not supported by substantial evidence within the meaning of the statute.

Reversed and remanded for entry of an order granting disability benefits in accordance with the applicable statute.