Barbara M. CORNETT, Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of
Health, Education and
Welfare, Appellee.

No. 77–2201.

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1978.

Decided Dec. 27, 1978.

Louis Fireison, Bethesda, Md., for appellant.

William B. Cummings, U. S. Atty., Thomas K. Berger, Asst. U. S. Atty., Alexandria, Va., Stephanie W. Naidoff, Regional Atty., and Thomas A. Dougherty, Jr., Asst. Regional Atty., Dept. of Health, Education and Welfare, Philadelphia, Pa., for appellee.

Before BUTZNER and HALL, Circuit Judges, and CHAPMAN,* District Judge.

* Robert F. Chapman, United States District Judge for the District of South Carolina, sitting by designation.

CHAPMAN, District Judge.

Barbara M. Cornett, (sometimes hereinafter "claimant") has appealed the decision of the District Court which sustained the Secretary's finding that although claimant suffered certain physical impairments, she was not under a disability as defined by the Social Security Act.

Although three issues were presented on appeal, it is only necessary to decide whether the Secretary's finding that the claimant's condition left her substantially and gainfully employable was supported by substantial evidence.

The record reflects that claimant was born July 6, 1935; she stands six feet one inch tall and weighs 240 lbs. She claims inability to work beginning November 27, 1974 due to intracranial pressure, which is either due to or complicated by dizziness, a constant severe headache, syncopal episodes (temporary loss of consciousness) presbyopia (loss of ability to focus the eye on objects near at hand), nystagmus (abnormal and involuntary movement of the eye, usually from side to side), pseudotumor cerebri (a false, specious tumor of the mass of the brain), facial swelling often resulting in closure of the left eye, hypertension and obesity. These various symptoms and findings are supported by medical reports in the record.

Claimant testified that she had worked as a technical secretary, but her duties and responsibilities were much greater than those normally associated with such a position. The vocational expert testified that her duties were those of an administrative assistant.

Her physical problems began in 1969 when she began suffering severe pain in the left side of her head. This pain was similar to migraine headaches, and she testified that the pain had been continuously with her since March 1969. On March 19, 1969 she lost consciousness at her place of employment due to these symptoms. Since the spring of 1969 she has lost consciousness on many occasions both at home and at work. A number of lay witnesses, family, neighbors and former coemployees testified to

having been present during one or more of these syncopal episodes. Following these episodes it is often necessary for claimant to stay in bed for several days before she can get up and resume her normal activities. Her facial swelling, sometimes causing her left eye to close, has lasted for as long as two weeks at a time.

In an effort to relieve her pain the plaintiff has submitted to two surgical procedures: a nerve block neurectomy in January 1972 and a resection of the supra-orbital and supra-trachlear nerves in May 1972, but the pain persisted to the point that plaintiff discontinued work in November 1974.

Since leaving her employment claimant has done little housework, because almost any exertion intensifies her pain, and causes her to become dizzy. She can read very little because of the pain and problems with focusing her eyes. She has a high school education plus two years of home study at the college level. Prior to her illness she was well qualified in the field of secretarial science and the use of various pieces of office equipment. In a letter of November 19, 1974 Dr. Matthew N. Smith, a specialist in neurological surgery, stated that her syncopal episodes were suggestive of "minor seizures". He also stated that she had "intractable pain on the left side of her head and face". At that time claimant had been under Dr. Smith's care for approximately five years and had undergone the two surgical procedures for the alleviation of pain. Dr. Smith stated further:

At the present time she takes large quantities of medication in order to alleviate the pain sufficiently to continue doing her every day duties. Most recently she has had a visual impairment, especially in the left eye.

It is my opinion that she should discontinue her employment on a permanent basis. There are no further surgical procedures that are recommended in this case. She will need to continue on large doses of medication and is presently under the care of Dr. Mendel Bocknek, an ophthalmologist, for diminished vision in her eye.

In July 1975 Dr. Smith advised that she was still having syncopal episodes, headaches and dizzy spells, that anti-convulsive medication had not helped and that her EEG was "borderline". In the fall of 1975 the claimant was hospitalized by Dr. Smith with a diagnosis of cervical sprain with radiculitis.

The claimant was seen in June 1976 by Dr. A. Chalmeta, a neurologist, who evaluated the claimant at the request of the Social Security Administration. This doctor found no evidence of a pseudotumor cerebri, central nervous system lesion or epilepsy, but found that she had headaches, probably vascular and related to tension, congenital nystagmus, C8 radiculopathy on the left, probably related to cervical arthritis, hypertension and obesity. He stated in conclusion: "It is difficult to assess the degree of disability, if any, in the present patient because the main problem is pain. The same applies to prognosis."

The record shows that for a period of five years after her original attack in 1969 the claimant continued in her employment, but missed a great deal of time from work because of her physical problems and periods of hospitalization related thereto. During these five years her employer made many concessions to keep her employed, because she was a valuable and efficient employee. Claimant was allowed additional sick leave, administrative leave, her duties were changed from time to time and she was allowed to leave early during the winter months so as to be able to drive home prior to dark, since she could not see well enough to drive after nightfall.

At the hearing a vocational expert was called as a witness by the Secretary and interrogated by use of hypothetical questions from the administrative law judge. This witness testified that with claimant's age, education, training and vocational experience she could perform work in her home as a dictaphone transcriber.

The administrative law judge found that ". . . claimant's impairments include severe headaches, occasional black-out spells, a visual impairment, hypertension, obesity, and cervical radiculopathy on the left side." There was a further finding that the claimant did not retain the residual functional capacity to work as a technical secretary but did retain the ability to perform such similar and related work as dictaphone transcription. As a result claimant was found not to be disabled.

This finding was not supported by substantial evidence, which has been defined many times as "more than a scintilla and less than a preponderance". However, substantial evidence must do more than create a suspicion of the existence of the fact to be established. *Rivas v. Weinberger*, 475 F.2d 255 (5th Cir. 1973). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Breaux v. Finch*, 421 F.2d 687 (5th Cir. 1970).

The hypothetical questions put by the administrative law judge to the vocational expert do not fully describe the physical impairments of claimant. The questions do not accurately set forth the extent and duration of her pain, nor do such questions explain the nature of her visual impairments or the large amount of medication she constantly requires.

The testimony of the vocational expert makes it clear that the average employer would not hire or keep the claimant employed because of absenteeism that would result from her physical ailments, and this is the reason he described working at home as a dictaphone transcriber. It is highly questionable from this testimony that work as a dictaphone transcriber could be considered as substantial gainful employment. The vocational expert described this work as not requiring too much use of the eyes since they ". . . only have to scan the material they have typed." The Court finds it difficult to believe that anyone hiring a dictaphone transcriber would not expect her to proofread her work, but having seen some of the briefs, transcripts and other material submitted to the Court over

the years, it is obvious that a great deal of "scanning" and not proofreading takes place. When asked if there were a sufficient number of these jobs available the expert stated:

There are. It's not all that easy to get the person who wants typing done and the person who wants to do typing together. Most people start out by putting an ad in a local paper, one of the local little weeklies, you know, and try to build it up from there. Personal contact is helpful.

As an example, I do a lot of this myself. And about a year ago, it took me about a month of looking before I could find a competent person to do some typing that I wanted done.

■ The ability to work only a few hours a day or to work only on an intermittent basis is not the ability to engage in "substantial gainful activity". This term has been defined as "performance of substantial services with reasonable regularity in some competitive . employment or self-employment." *Prevette v. Richardson*, 316 F.Supp. 144 (D.S.C.1970).

■ The decision of the Secretary would require the claimant to create a job for herself by advertising her services and personal contact. The testimony of the vocational expert shows that there will be difficulty in finding clientele for such a business, and the testimony does not take into consideration the handicaps claimant would have in traveling about to make these personal contacts. This type employment, which must be started from scratch and hopefully develop with time, does not meet the definition of substantial gainful activity, since it does not entail the performance of substantial services with reasonable regularity. The law does not impose upon a Social Security claimant the requirement of becoming an entrepreneur so as to establish a business which requires the use of her capital as well as her labors.

The oft cited case of *Underwood v. Ribicoff*, 298 F.2d 830 (4th Cir. 1962) set forth the four elements of proof to be considered in making a finding of a claimant's ability or inability to engage in substantial gainful activity. These are:

(1) The objective medical facts, which are the clinical findings of treating and examining physicians divorced from their expert judgments or opinion as to the significance of these clinical findings,

(2) The diagnoses, and expert medical opinions of the treating and examining physician on subsidiary questions of fact,

(3) The subjective evidence of pain and disability testified to by the claimant, and corroborated by his wife and neighbors,

(4) Claimant's educational background, work history, and present age.

■ The administrative law judge has already found from the objective medical facts and medical opinions that the claimant suffers a number of physical impairments and that she does not contain the residual functional capacity to perform in her prior job. The evidence of pain and disability has been testified to in great detail by the claimant, her husband and seven of her neighbors. Although claimant's educational background is good and she is only in her early forties with a good work history as a technical secretary, the evidence is overwhelming that she cannot engage in her prior activities and the employment suggested by the administrative law judge does not qualify as "substantial gainful activity" because it places an impossible burden upon the claimant of establishing a new business when she is suffering from so many physical impairments.

Since the opinion is not based upon substantial evidence the same must be reversed.

The judgment of the Court below is reversed and judgment shall be entered for the plaintiff.