William FLAM, Plaintiff,

v.

Joseph CALIFANO, Secretary of Health, Education and Welfare, Defendant.

No. 77 C 1426.

United States District Court, E. D. New York.

Feb. 5, 1979.

As Amended Feb. 14, 1979.

Joan Mangones, The Legal Aid Society, Staten Island, N. Y., for plaintiff.

Edward Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for defendant; Jan F. Constantine, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

Memorandum of Decision and Order

MISHLER, Chief Judge.

This is an action brought pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), and section

1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), to review a final determination of the Secretary of Health, Education and Welfare, which denied plaintiff's application for a period of disability, disability insurance benefits, and supplemental security income benefits based on disability. Both parties have moved for judgment on the pleadings. The only issue before the court is whether the Secretary's decision was supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Because we find that the record has not been fully developed, and that pertinent information has been ignored or unexplored, we remand for further proceedings as set forth below.

## PRIOR PROCEEDINGS

Plaintiff filed a prior application for disability benefits on August 6, 1969, which was denied initially and on reconsideration. After a hearing *de novo*, the Administrative Law Judge on August 31, 1970 reversed the decision, and found plaintiff disabled from October 31, 1968 to March 31, 1970, but not thereafter.

Plaintiff filed the present application for disability benefits and SSI benefits on May 1, 1974. The applications were denied initially and on reconsideration. Plaintiff requested a hearing, which was held on March 19, 1976. The Administrative Law Judge, on April 23, 1976, determined that plaintiff was not under a disability. This determination became the final decision of the Secretary when it was approved by the Appeals Council on July 26, 1976. On October 27, 1977, the Appeals Council extended the time within which plaintiff could commence a civil action to review the Secretary's decision until July 8, 1978, the day on which this action was filed.

## BACKGROUND

Plaintiff, is a 36 year old man who, in his applications, claimed a disability due to chronic low back problems and mental illness. In this action, the plaintiff emphasizes his alleged mental infirmity, alleging that the Administrative Law Judge erred in failing to consider properly evidence of that infirmity in making his determination.

According to the plaintiff's testimony, his history of mental illness began fifteen years ago, when he was placed in Kings Park State Hospital by his parents. Following his discharge, his behavior became marked by repeated incidents of exhibitionism, frequently resulting in arrest.[1] (Tr. 120, 124, 127). There are indications that he sought therapy at the Jamaica Center for Psychotherapy in 1964–1965, and that in 1966, after an arrest for contributing to the delinquency of a minor and molestation, the Municipal Court of Kansas City referred him to the Western Missouri Mental Health Center. There, a diagnosis of "sexual deviation, exhibitionism" was made. (Tr. 121). In 1968, plaintiff was once again arrested for molestation; upon his release from incarceration, he committed himself to the Veterans Administration Hospital in Topeka, Kansas. He stayed in that institution from July 14, 1969 until March 31, 1970. At the VA Hospital, he was diagnosed as a "Sexual Deviant (Exhibitionist)." (Tr. 136).

From August 11, 1972 until March 29, 1973, plaintiff was an outpatient at the Westside Health Center, Denver, Colorado, where he received group, individual and drug therapy. (Tr. 136). According to the medical records of that facility, plaintiff reached a stage of control where he went from "exposing himself every day to only now & then—every 3 weeks or so." (Tr. 183). In 1973, while plaintiff was operating his own rug-cleaning business, he was arrested for exposing himself in his truck. In February of 1974, he began weekly sessions at the Maimonides Medical Center Community Mental Health Center. (Tr. 187). The last notations in his medical records from that institution, dated March 18, 1975, indicated that, following an arrest for exposure

1. The record is unclear as to precisely when the plaintiff's exhibitionist tendencies first manifested themselves. Contrary to the statement the plaintiff made to the Administrative Law Judge, there is evidence in the record that his problems began "at approximately age 12 or 13 at which time he began to expose himself publicly." (Tr. 120).

in October of 1974, he decided to leave New York. His prognosis was termed "very poor." (Tr. 187). At present, he is seeing a psychiatrist, who reported a diagnosis of "Sexual Deviation—Exhibitionism," and stated the prognosis "must be guarded in general. Employment is most difficult due to his unstable condition. . . . " (Tr. 272).

Plaintiff is a high school graduate who has spent a year and a half each at two chiropractic schools, without attaining a degree, and one year at a nursing school. (Tr. 33). He has been unemployed since 1973, living on welfare payments of $244 per month. (Tr. 41). From 1958 until 1973, he worked at numerous jobs: operator of a plating machine; orderly in hospitals and a nursing home; counter work at a fast food restaurant; clothing store salesman; elevator operator; shoe salesman; postal worker; retail outlet store salesman; theater usher; nightclub bouncer and maitre d'; eyeglass fitter; gas station attendant; janitor; optician; bartender; box cutter and folder; mattress factory worker; carpet cleaner; security guard and waiter. (Tr. 41–62). He claims to have lost these jobs as a result of being arrested, or the discovery of his history of arrests and hospitalizations by his employers. This history also prevents him from obtaining employment. (Tr. 63–67).

The Administrative Law Judge stated that "[a]lthough physical and mental defects may cause limitation of functional activity, it does not follow that it [sic] results in a complete limitation of industrial usefulness." He therefore held that the plaintiff had not sustained his burden of proving a disability:

> The medical evidence reflects underlying physical and mental impairments which, singularly and in the aggregate, are wholly disproportionate to the overwhelming disability that this applicant has [claimed].

We do not find that this holding is supported by substantial evidence.

The critical question here is whether plaintiff has the ability to control his exhibitionism. If he does not, he is incapable of substantial gainful activity. As this court has stated, the test is whether the plaintiff can "as a practical matter compete for, secure, and sustain employment." *Mapp v. Secretary of HEW*, No. 78 C 2182 (E.D.N.Y. Oct. 27, 1978). *See also Terio v. Weinberger*, 410 F.Supp. 209 (W.D.N.Y. 1976); *Zambrana-Domenech v. Secretary of HEW*, 370 F.Supp. 399 (D.P.R.1974). A man who exposes himself while on the job, as plaintiff did in the back of his own truck, cannot meet this test. The Administrative Law Judge's opinion, which solely considered plaintiff's "industrial usefulness" and "capacity to work," did not take this into consideration.

That the plaintiff's complaint is a personality disorder, as opposed to a physical impairment, should not bar his claim. Regulations promulgated by the Secretary originally provided that a personality disorder, standing alone, was not sufficient to sustain a finding of disability,[2] see 26 Fed. Reg. 5575 (1961). However, these provisions were amended in 1968. A finding of disability can now be based upon a personality disorder

> [m]anifested by marked restriction of daily activities and deterioration in personal habits and seriously impaired ability to relate to other people and persistence of one of the following:
>
> G. Long-lasting, habitual and inappropriate patterns of behavior manifested by one of the following:
>
> 2. Antisocial or amoral behavior (including pathologic sexuality) manifested by: (a) inability to learn from experience and inability to conform with accepted social standards, leading to repeated conflicts with society or authority and (b) by psychopathology documented by mental status examination and the results of ap-

---

2. *But cf. Underwood v. Gardner*, 267 F.Supp. 802 (W.D.Mo.1967) (regulation providing that personality disorders could not, by themselves, be disabling held too restrictive and inconsistent with the Social Security Act).

propriate, standardized psychological tests . . ..

20 C.F.R. § 12.04 of the Appendix to Subpart P, page 351 (1978). 33 Fed.Reg. 11749 (1968). The change in the regulations is indicative of the change in society's attitude toward mental illness and personality disorders. As the medical sciences have advanced in their understanding of mental and emotional ailments, the potentially crippling effects of these disorders have been recognized:

> It may be more difficult to comprehend mental disorders and their effects on an ability to work than it is to understand the effects of pure physical ailments. But this should in no way preclude a finding of disability based on mental conditions.

*Rayborn v. Weinberger,* 398 F.Supp. 1303, 1310 (N.D.Ind.1975).

The record is unclear, however, as to whether or not the plaintiff can control his problem. Suffice it to say, that while there is no substantial evidence that he *can* control his disability, neither is there substantial evidence that he cannot; the matter simply was not adequately explored by the Administrative Law Judge.

The case is remanded to the Secretary for the purpose of more fully developing the record. The plaintiff is directed to submit to a physical and/or psychiatric examination as specified by the Secretary or the Administrative Law Judge, including, if so directed, as an in-patient. The plaintiff is to submit to this examination if so directed pursuant to 20 C.F.R. § 404.1527 (1978) [3] for such period as the institution requires to conduct a complete physical and mental examination.

When presented with results of these examinations, the Secretary is to consider plaintiff's application in light of the above-quoted regulation. The decision rendered should refer specifically to plaintiff's psychological impairment, and take into account the probable duration of the condition and the possibility of a cure.

## CONCLUSION

Plaintiff's motion and defendant's cross-motion for judgment on the pleadings are denied. The case is remanded for proceedings not inconsistent with this opinion, and it is.

SO ORDERED.

---

3. 20 C.F.R. § 404.1527 (1978) provides, in pertinent part:

> Upon reasonable notice of the time and place thereof, any individual alleged to be under a disability shall present himself for and submit to physical or mental examinations or tests, at the expense of the administration, by a physician or other professional or technical source designated by the Administration . . . .. If any such individual fails or refuses to present himself for any examination or test, such refusal or failure . . . . shall be a basis for determining that such individual is not under a disability.