WRIGHT, Joya, Appellant,

v.

SULLIVAN, Louis, Secretary of Health
and Human Services.

No. 89–1678.

United States Court of Appeals,
Third Circuit.

Argued Jan. 17, 1990.

Decided April 9, 1990.

Eric J. Fischer (argued), Disability Law Center of Fischer & Walkenhorst, Philadelphia, Pa., for appellant.

Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Chief, Social Security Litigation Div., Lawrence J. Harder, Asst. Regional Counsel (argued), Office of the Gen. Counsel, Dept. of Health and Human Services, Michael M. Baylson, U.S. Atty., David H. Ward, Asst. U.S. Atty., E.D.Pa., Philadelphia, Pa., for appellee.

Before BECKER, GREENBERG and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

This is an appeal in a social security case. The appellant, Joya Wright, claims entitlement to disability income benefits under Title II of the Social Security Act because of disability attributable to mental problems. The Secretary of Health and Human Services found that she was disabled, but only as of August 1, 1987, when she stopped her work as an on call rape crisis counselor with Women Organized Against Rape. The primary issue on this appeal is whether this employment constituted "substantial gainful activity" within 42 U.S.C. § 423(d) and 20 C.F.R. § 404.1572 (1989). We conclude that her satisfactory performance of substantial, remunerative,[1] non-sheltered work on an on call basis, without special accommodations, constituted substantial gainful activity within the meaning of the Social Security Act. Thus, as an individual to be disabled under Title II of the Social Security Act must be prevented from performing any substantial gainful activity by reason of a medically determinable impairment, *see* 42 U.S.C. § 423(d)(1)(A), her actual employment barred her from benefits for the period in dispute prior to August 1, 1987, regardless of her mental condition. *Id.;* 20 C.F.R. § 404.1520(b) (1989).[2]

A second issue on the appeal is whether the Secretary properly declined to treat Wright's application for benefits under Title II as an oral inquiry regarding supplemental security income under Title XVI of the Act. We uphold his action in this regard, as under the regulations the Secretary is required to treat an application under Title II as such an oral inquiry only if "it looks as if" the claimant might be disabled on the basis of her Title II application, a condition not met in this case inasmuch as Wright was working when she filed her application. 20 C.F.R. § 416.350 (1989).

## FACTS

Wright, who was born on September 24, 1945, has completed high school and three years of college. Her last non-sheltered job was as an emergency room rape counselor for Women Organized Against Rape, a position she obtained in January 1985.

---

1. Guidelines for determining what level of earnings constitute substantial remuneration are found at 20 C.F.R. § 404.1574 (1989), as recently modified by 59 FR 53600 (December 29, 1989).

2. Accordingly, it was established that Wright was not disabled on the first step of the familiar five-step sequential evaluation process used to determine if a person is disabled. *See Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987).

Prior to that she worked as a hospital aide and as a secretary.

According to Wright's supervisor, her position with Women Organized Against Rape was "a part-time position on an on call basis, not a full-time job with regular hours." Wright was on call between the hours of 9 a.m. and 4 p.m., five days a week, during which time she carried a "beeper" so that she could be called to respond to emergencies. She was paid $1.50 per hour while on call, plus $20.00 for each rape victim she counseled. Wright was called upon to counsel victims between three and ten times per week, and in each instance in which she counseled a victim she filled out a form for her office. The usual counseling session lasted about one-half an hour but sometimes she talked to a victim for over an hour. On occasions Wright would double staff, meaning she took a co-worker's cases as well as her own. In addition to counseling and filling out reports, Wright attended monthly staff meetings.

While on call, Wright was not required to stay at her office and was free to do anything she wanted, even "window shopping." However, the evidence in the record does not indicate she ever missed or refused a call, or that she performed her counseling responsibilities in an unsatisfactory manner. Her earnings averaged $382.29 per month in 1985 (ranging from $247.33 to $662.50), $377.96 per month in 1986 (ranging from $104.00 to $534.25), and $511.00 per month for the first five months of 1987 (ranging from $349.00 to $712 in May, the last month for which there is information in the record), thus presumptively indicating she was engaged in a substantial gainful activity. *See* 20 C.F.R. § 404.1574(b)(2)(vi) (1989).

On July 31, 1987, Wright resigned her job as a rape counselor, as she found it too stressful. She started working on August 17, 1987, in a sheltered workshop at the Orleans Vocational Center. She is being treated at the Poplar Street Guidance Clinic for what her psychiatrist, Dr. Stephanie A. Ward, describes as "a long history of severe anxiety and depression and very poor coping skills." According to Dr. Ward, "the strength of her angry and hostile feelings are such that a major tranquilizer is indicated," and it has in fact been prescribed. Wright has had "vague suicidal thoughts in the past, but no plan to act." Dr. Ward has also indicated that Wright has grown to hate people and this affects "her ability to work and to cope with people in a social situation." Nevertheless while employed by Women Organized Against Rape, according to Dr. Ward, "she appeared to function adequately."

## PRIOR PROCEEDINGS

Wright filed an application for disability benefits on February 17, 1987, while she was still working as a rape counselor, claiming that she had been disabled due to a mental condition since October 1985.[3] This application was denied on April 7, 1987, because her employment with Women Organized Against Rape was regarded as substantial gainful activity. She requested reconsideration on April 22, 1987, and this was denied on August 8, 1987.

On August 11, 1987, Wright requested a hearing before an administrative law judge and it was held on June 21, 1988, with Wright being represented by an attorney. On September 15, 1988, the administrative law judge issued a ruling that Wright was disabled effective August 1, 1987, the day after she stopped working at Women Organized Against Rape. On November 11, 1988, Wright requested a review of the judge's decision, as she believed she should have been awarded an earlier disability date, but the Appeals Council denied the request on March 31, 1989, and its decision was the final decision of the Secretary. *See* 20 C.F.R. 416.1400(a)(5) (1989). On April 19, 1989, Wright brought this action seeking review of the decision. The Secretary subsequently moved for summary

3. She also claimed disability from diabetes but the administrative law judge noted in his decision that there is no evidence in the record of treatment for diabetes and no evidence that her diabetic condition is so uncontrolled as to be disabling. This issue has not been raised on appeal or in the district court's opinion, and is thus not further considered here.

judgment which was granted on July 28, 1989. Wright then timely appealed on August 10, 1989. The district court had jurisdiction under 42 U.S.C. § 405(g) and we have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

### STANDARD OF REVIEW

There is some question as to our standard of review. The Secretary contends that the first issue presented, whether Wright's on call work constituted "substantial gainful activity," presents a factual question so that we should affirm if his findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). This is certainly the usual approach and is probably applicable here. It does appear, however, that there is no real dispute as to what Wright did on a day by day basis for Women Organized Against Rape so that the substantial gainful activity issue arguably is a legal matter, indicating a plenary scope of review. *See Podedworny v. Harris*, 745 F.2d 210, 221 n. 8 (3d Cir.1984). *See also Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984) (" '[w]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.' "). We need not, however, definitely choose between these two standards because even if we exercised plenary review we would affirm. Predicated, however, on the Secretary's concession that we should do so, we will exercise plenary review on the issue of whether the Secretary properly declined to treat the Title II application as an oral inquiry about supplemental security income.

### THE SUBSTANTIAL GAINFUL ACTIVITY ISSUE

*Valid regulations state that part-time work can constitute substantial, gainful activity.*

Wright first contends that the Social Security Act as a matter of law precludes the agency from concluding that a person whose work is part-time has engaged in *substantial* gainful activity. Thus, as she regards her work at Women Organized Against Rape as having been part-time, in her view she cannot be barred from the receipt of Title II payments simply because of her work. The Secretary responds that Wright's work cannot be reasonably characterized to have been part-time, that even she thought she was employed full-time, but that in any event, her work, however characterized, was substantial gainful activity.

■ The germane regulation on this issue is 20 C.F.R. § 404.1572(a) (1989), which provides that "work may be substantial even if done on a part-time basis...." This regulation was promulgated pursuant to 42 U.S.C. § 423(d)(4), which states that "[t]he Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial, gainful activity." The Supreme Court has noted that "[w]here, as here, the statute expressly entrusts the Secretary with the responsibility for implementing a provision by regulation, our review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious." *Heckler v. Campbell*, 461 U.S. 458, 466, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983). *See also Sullivan v. Everhart*, —— U.S. ——, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990); *Sullivan v. Zebley*, —— U.S. ——, 110 S.Ct. 885, 890, 107 L.Ed.2d 967 (1990).

Wright cites *McDowell v. Richardson*, 439 F.2d 995 (6th Cir.1971), for the proposition that a claimant's inability to work at least seven or eight hours a day indicates disability. But there the "seven or eight hours a day" referred to the requirements of the jobs for which the claimant was being considered, which were far beyond his ability to work 15 minutes at a time. The regulations provide that:

[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.... If work that you can do does not exist in the national economy, we will determine that you are disabled.

20 C.F.R. § 404.1566(b) (1989).

If all jobs in the national economy which a claimant can perform require work for seven hours a day, which is beyond a claimant's capability, then work for the claimant does not exist in the national economy, and the claimant is disabled.[4] Therefore, *McDowell* does not support Wright's position, for notwithstanding her condition she did hold a job for which she was qualified, even if its on call nature permits it to be characterized as part-time.

In *Tucker v. Schweiker*, 650 F.2d 62, 63 (5th Cir.1981), the claimant, prior to his disability, owned and operated a one-truck sand and gravel hauling business. After he was disabled, he made an agreement with a driver who took over the operation, using the claimant's truck. "The uncontested testimony ... indicat[ed] that [the claimant] spends about two to three hours per month performing the paperwork for the business." *Id.* at 63.[5] The court noted that the regulations:

> require an examination of whether 'the time [spent] is comparable to time customarily spent by individuals without impairment with in similar work activities as a regular means of livelihood....' 20 C.F.R. 404.1533 (1980). We are unaware of any 'regular means of livelihood' requiring only two or three hours of sedentary activity per month.

650 F.2d at 64.

Thus, the claimant was not doing substantial gainful activity. By contrast, current regulations provide that:

> While the time you spend in work is important, we will not decide whether or not you are doing substantial gainful activity only on that basis. We will still evaluate the work to decide whether it is substantial whether you spend more time or less time at the job than workers who are not impaired and who are doing similar work as a regular means of their livelihood.

20 C.F.R. § 404.1573(e) (1989).

Of course, Wright spent the same time on the job as the other counselors. Thus, her work was not at all like that of the claimant in *Tucker*. Furthermore, *Tucker* held that:

> [a]lthough the [Secretary's] regulations also state that performance of 'significant activities on a part-time basis [may] show an ability to engage in substantial gainful activity,' they do not state that such work itself constitutes substantial gainful activity.

650 F.2d at 64.

On the other hand, current regulations state that "work may be substantial even if it is done on a part-time basis," 20 C.F.R. § 404.1572 (1989). Overall, it is quite clear that *Tucker* is simply not support for Wright's position.

In *Cornett v. Califano*, 590 F.2d 91 (4th Cir.1978), the claimant, prior to the onset of her disability, had been a secretary. She suffered severe headaches, facial swelling, periodic loss of consciousness, the loss of the ability to focus the eye on objects near at hand, and dizziness. A vocational expert

---

**4.** *Greene v. Weinberger*, 391 F.Supp. 632, 637 (E.D.Pa.1975), cited by Wright, relies on *McDowell* for the conclusion that only full-time work can constitute substantial gainful activity, a conclusion we reject under current regulations. However, *Greene* also noted that "even if part-time work would qualify as substantial gainful employment, we have no evidence that such work is available to claimant. The only work which the vocational expert in the instant case testified claimant might obtain were full-time jobs...." *Id.*

Thus, *Greene* does not support Wright's claim as work was in fact available for her.

**5.** The court also noted that the claimant's earnings from his business were not all attributable to his work activity. "[The claimant's] ownership of the truck and his goodwill and business relationships are capital assets, and his earnings do not reflect continuing substantial work activity." *Id.* at 64. *See* 20 C.F.R. § 404.1575 (1989). Obviously Wright's earnings cannot be likewise characterized.

called by the Secretary concluded that an employer would not hire or keep her employed because of absenteeism that would result from her physical ailments, but suggested that she could work at home as a dictaphone transcriber. The vocational expert said that such work did not require too much use of the eyes because she would "'only have to scan the material [she] typed.'"[6] *Id.* at 93. The court concluded that "[t]he law does not impose upon a Social Security claimant the requirement of becoming an entrepreneur," noting the difficulty the claimant would have in finding clients for such a business. *Id.* at 94. The rule that the court formulated was that "[t]he ability to work only a few hours a day or to work only in an intermittent basis is not the ability to engage in 'substantial gainful activity.' This term has been defined as 'performance of substantial services with reasonable regularity in some competitive employment or self-employment.'" *Id.* The ability to do work cannot lead to gainful activity unless someone would be willing to pay for it. Employers need reliability in their employees, and an employer would would be reluctant to hire an employee who is only sporadically able to work. Thus, as Wright in fact performed work for which she received remuneration, *Cornett* is distinguishable from this case.

Wright's position finds some support in *Johnson v. Harris*, 612 F.2d 993 (5th Cir. 1980), where the court stated that "[i]t has been held that a physical limitation which prevents a claimant from working a full workday, minus a reasonable time for lunch and breaks, constitutes a disability within the meaning of the Act." *Id.* at 998. We, however, conclude that *Johnson* is not persuasive for a number of reasons. To start with *Johnson* cited *Cornett* for its result but *Cornett* did not so hold. Furthermore, we do not understand why a person who is able to do gainful remunerative work for a significant portion of a day should be regarded as disabled, for numerous jobs exist in the economy which require

less than a full workday. In any event, the claimant in *Johnson* was unable to hold any job as he suffered from a broken neck, a fusion of his lumbar spine, and three ulcers. *Id.* at 995–96. He "[was] not able to stand, sit, or lie down in one position for long periods of time." *Id.* at 96. He could "walk only two or three blocks without resting." *Id.* Thus, there is no real comparison between the problems of the claimant in *Johnson* and those of Wright, and the expansive definition of disability in *Johnson* seems not to have been needed to support the conclusion reached there.

■ Finally, and most importantly of all, *Johnson* did not give consideration to the regulations adopted by the Secretary which provide that work may be a substantial gainful activity, though part-time. *See Heckler v. Campbell*, 461 U.S. at 466, 103 S.Ct. at 1957. For this reason, the Court of Appeals for the Eighth Circuit, in *Burkhalter v. Schweiker*, 711 F.2d 841 (8th Cir. 1983) "d[id] not find *Johnson* instructive or persuasive." *Id.* at 845. Neither do we. Indeed, in *Burkhalter* the court found that a claimant who cleaned offices for $3.10 per hour five hours a day, five days a week, was engaged in a substantial gainful activity. We think that Wright's activities with Women Organized Against Rape were no less substantial. Overall, we conclude that the fact that Wright was not engaged in a conventional full-time job does not per se establish the negative finding that she was not employed in a substantial gainful activity. Thus, we must determine whether she in fact was engaged in a substantial gainful activity.

*The record shows that Wright's work was "substantial gainful activity."*

■ Wright notes that while she was on call she "didn't have to be at the office" and could "do whatever [she] wanted," even "window shopping." She asserts that she was paid for hours on call, even though she did not "perform any mental, physi-

---

**6.** The Court found it difficult to believe that anyone hiring a dictaphone transcriber would not expect her to proof read her work, but, upon considering some of the briefs and other materials submitted to it over the years, concluded that scanning and not proof reading is what frequently takes place.

cal/intellectual job functions," and therefore suggests that when she was on call she was not engaged in a substantial gainful activity within 20 C.F.R. § 404.1574(b)(2) (1989). However, Wright makes no claim that any part of her pay, including the $1.50/hour "on call" pay, represented a subsidy and there is no claim that she was not earning all that she was being paid. *See* 20 C.F.R. §§ 404.-1574(a)(2), (3) (1989).

The fact is that Wright had the continuous ability to perform the work required for her job and thus her situation was different from that of some of the claimants in the cases we have discussed. She waited with her beeper for seven hours a day, five days a week, and we are aware of no evidence that she ever missed a call. Furthermore, the record discloses no instances where her psychiatric problems caused her to call in sick, or to refuse a call, or to perform her duties unsatisfactorily.[7] While she may have been "window shopping" all day, she was available when the need arose for her services and it was this availability that was valuable to Women Organized Against Rape. The nature of the job, emergency room rape counselor, required that Wright be available, even though the need for her services was not constant. Her argument that only the time that she spent actually counseling victims should be considered is thus without merit for she was paid to wait.

The fact is that insofar as we can ascertain Wright performed her job exactly like other rape crisis counselors who did not have any conditions that could support a claim of disability under Title II. It would defy common sense to hold that a claimant who asserted a disability was not engaged in substantial gainful employment when her job performance on a substantial, remunerative on call job requiring intermittent activity was the same as that of other employees doing the same work. Indeed, if we reverse the decision of the Secretary, we would be inferentially concluding that none of the counselors was engaged in a substantial gainful activity. But clearly, the very circumstance that there are rape counselors demonstrates the unfortunate fact that there is a need in our economy for such persons.

*The Secretary did not rigidly apply the earnings presumption.*

■ Wright suggests that the Secretary has rigidly applied the presumption that earnings averaging more than $300.00/month in calendar years after 1979 ordinarily show substantial gainful activity, 20 C.F.R. § 404.1574(b)(2)(vi) (1989).[8] She cites *Coulter v. Weinberger*, 527 F.2d 224 (3d Cir.1975), in support of the proposition that the "[administrative law judge] cannot end his inquiry when a magic number on an earnings scale appears." *Id.* at 229. In *Coulter*, the judge did not take into account the fact that the claimant held thirteen different jobs in less than ten years, all but two for six months or less and he did not consider whether the jobs should have been considered as a "period of trial work" under 42 U.S.C. § 422(c), or whether they came under the exemption of 20 C.F.R. § 404.1534(a) [now § 404.1574(a)(1) (1989)], which "establishes that an individual's earnings do not show the absence of a disability when he 'is forced to discontinue his work activities after a short time because his impairment precludes continuing such activities.'" *Coulter*, 527 F.2d at 229–30.

By contrast, the administrative law judge here thoroughly considered the circumstances of Wright's employment. The

---

**7.** Since the disability question focuses on the work Wright did and whether it was a substantial gainful activity, the significant inquiry is whether Wright's employer found that her performance met the requirements of the job, which it did, as opposed to whether the employer should have found her performance adequate. Of course, by noting that Wright did not call in sick, we do not suggest that if she had she would not have been engaged in a substantial gainful activity. Obviously, almost all employees at times become ill. We have noted the point simply to demonstrate the uneventful nature of her employment.

**8.** This amount has been raised to $500.00 per month effective January 1, 1990. *See* Determining Disability and Blindness; Substantial Gainful Activity, 54 Fed.Reg. 53600 (December 29, 1989).

judge stated his conclusion that Wright's work as a counselor was substantial gainful activity was based on "Mrs. Wright's supervisor's statements that the job was to be performed without any specific consideration given to her. While this job was part-time in nature, it [was] certainly not protected employment, and Mrs. Wright's income was at all times in excess of [substantial gainful activity] levels." He also noted Wright's own testimony that she was engaging in substantial gainful activity, citing Exhibit 8, her "Work Activity Report," in which Wright noted [9] that she was not employed by Women Against Rape in any "special employment situation" (*i.e.*, by a friend or relative or through a special training or rehabilitation program) and that her job duties were in no way different from those of other workers with the same job title.

*Wright's ability to work was not "sporadic."*

■ Wright contends that her "sporadic" work did not constitute substantial gainful activity and in this regard notes that this court has held that "sporadic or transitory activity does not disprove disability." *Smith v. Califano*, 637 F.2d 968, 971–72 (3d Cir.1981). In *Smith*, the claimant suffered from a chronic duodenal ulcer disease and spastic irritable colon. The administrative law judge relied on the claimant's testimony that he "does shopping and last fall went hunting twice," to find an absence of disability. *Id.* at 971. We noted that "shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Id.* Wright, by contrast,

was available for work five days a week for two and one-half years.

Wright's citation to *Kangas v. Bowen*, 823 F.2d 775 (3d Cir.1987), provides her with no comfort. In *Kangas* the claimant had " 'frequent lung infections requiring hospitalization, sometimes every two to three months ... his exacerbations have required seven to ten days of hospitalization, and are followed by a one week to two week recovery period at home.' " *Id.* at 776. He was, however, capable of performing work activity when he was not suffering from an exacerbation. *Id.* We found that " 'substantial gainful activity means performance of substantial services with reasonable regularity.' " *Id.* at 778. By contrast, Wright was regularly available to perform her job. In *Kangas* we cited *Chiappa v. Sec'y of HEW*, 497 F.Supp. 356, 360 (S.D.N.Y.1980), for the proposition that " '[t]he extent to which a disability may prevent regular work attendance is a relevant factor in determining whether a claimant is able to engage in substantial gainful activity.' " *Kangas*, 823 F.2d at 778. Wright's work attendance was regular, with the exception of a few weeks absence in June 1986.[10] In *Kangas*, we further cited *Flam v. Califano*, 469 F.Supp. 793, 795 (E.D.N.Y.1979), for the proposition that substantial gainful activity "contemplates that the plaintiff 'can as a practical matter compete for, secure, and sustain employment.' " *Kangas* 823 F.2d at 778. Wright demonstrated all of these capabilities with regard to the counseling job, in a competitive, non-sheltered environment.

In *Barats v. Weinberger*, 383 F.Supp. 276 (E.D.Pa.1974), cited by Wright, the claimant was in constant pain due to a fall which damaged her spine and pelvis. She was "flat on the sofa most of the after-

---

**9.** We recognize that Wright was unrepresented when she filled out this form, and that unrepresented claimants are entitled to special consideration in Social Security proceedings. *See Dobrowolsky v. Califano*, 606 F.2d 403, 406–09 (3d Cir.1979). However, she was represented at her hearing before the administrative law judge, and no different evidence appears in the transcript of that hearing.

**10.** Wright claims that her earnings history was "erratic." She provides no further explanation, and, based on the way she was paid, it appears that this was due to variations in the number of victims needing counseling.

noon" and, though able to do semi-sedentary work on some days, could not do so with any regularity due to her pain. *Id.* at 284. The court concluded that "[c]apability to perform intermittent, sporadic or infrequent activity does not constitute ability to engage in substantial gainful activity.... [Substantial gainful activity] does require 'a significant quantity of fairly constant physical, mental or mixed physical or mental service productive of value or benefit.'" *Id.* Taken literally, this criterion, though appropriate for the facts in *Barats,* would exclude productive on call jobs from being considered substantial gainful activity and thus it cannot be applied here because of Wright's actual employment. *See* 20 C.F.R. § 404.1520(b) (1989).[11]

*Substantial evidence outweighed the psychotherapist's conclusory statement that Wright was unable to engage in substantial gainful activity.*

■ We recognize that Wright's psychotherapist, Gary D. Levine, M.A., wrote in his report that Wright's work at Women Organized Against Rape was "one of convenience and necessity." He states that "Ms. Wright then, as now, would not have been able to maintain substantial gainful employment. This is supported by her poor performance at A.P. Orleans [the sheltered workshop where she is now working]." Understandably, Wright relies on his testimony.

The Secretary correctly notes that Levine's conclusion has no support in the record and he may therefore find the statement outweighed by other evidence in the record. Furthermore, Levine does not explain how Wright's later performance at Orleans is indicative of what she did earlier. It is evident that Levine confronted the reality of Wright's performance with his assessment of her theoretical abilities. But this type of conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that "[a] statement by your physician that

you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are 'disabled.'" *See Newhouse v. Heckler,* 753 F.2d 283, 286 (3rd Cir.1985). Counter to Levine's opinion, the record contains Dr. Ward's statement that Wright "appeared to function adequately" at Women Organized Against Rape, and the report of Wright's supervisor there that her performance was satisfactory.

*The fact that Wright's job may not have been listed in the "Dictionary of Occupational Titles" does not mean that it cannot constitute substantial gainful activity.*

■ Wright suggests that her work as a rape counselor could not be considered substantial gainful employment, because the job was not listed in the "Dictionary of Occupational Titles, Fourth Edition 1977" [DOT] published by the Employment and Training Administration of the U.S. Department of Labor. The Social Security Administration uses the DOT to "take administrative notice" of jobs in the economy. *See* 20 C.F.R. § 404.1566(d)(1) (1989). Wright cites *Townley v. Heckler,* 748 F.2d at 113, for the proposition that the DOT contains "every" job in the economy, and that improper use of the dictionary of occupational titles is grounds for reversal. In *Townley,* the DOT was used for its usual purpose, determining what jobs are available in the economy. There the Secretary's vocational expert used an obsolete version of the DOT, and found that certain unskilled jobs were available in the economy when the jobs had come to require much higher skills. Here, the Secretary did not use the DOT, for the very practical reason that it was not necessary to determine whether the job Wright actually performed existed.

---

11. Consider the following jobs listed in the U.S. Department of Labor, Employment and Training Administration's *Dictionary of Occupational Titles* (4th ed. 1977), cited by Wright: Autocamp attendant; Caretaker, Resort (*Id.* at 233); Watch Guard (*Id.* at 252) and House Sitter (*Id.,* Fourth Edition Supplement, 1986, at 27). All of these jobs involve a great deal of waiting, and a little bit of activity. However, since the need for the activity in each case is sporadic, the availability of the worker is the "service productive of value."

In the introduction to the DOT, the Secretary of Labor notes that the DOT describes "the *majority* of occupations" in the economy. *See* Dictionary of Occupational Titles, Fourth edition, at iii (Message from the Secretary). The fact that an emergency room rape counselor is not found in the DOT proves the DOT is not comprehensive, not that the job does not exist. One might as well say that Wright should never have been paid for her work since her job did not exist.

## THE SUPPLEMENTAL SECURITY INCOME ISSUE

Wright claims that the Secretary violated his regulations by refusing to consider her disability benefit application as a constructive application for Supplemental Security Income (SSI) benefits. On November 11, 1988, when Wright requested review of the administrative law judge's decision, she raised for the first time the argument that her disability application should be treated as a "constructive filing of [an] SSI application." The Appeals Council, when it denied the request for review on March 31, 1989, stated that the request for supplemental security income could not be considered because it was "not an issue at the lower levels of adjudication." The Appeals Council suggested that Wright "contact the officials in [her] Social Security office about applying for supplemental security income payments."

The regulations provide that a written application for supplemental security income benefits will be retroactively dated to that of an earlier oral inquiry, 20 C.F.R. § 416.345 (1989), and that an application for Title II benefits will be considered an oral inquiry with regard to supplemental security benefits if "it looks as if the [applicant] might qualify as a blind or disabled

person." 20 C.F.R. § 416.350 (1989). There is no dispute as to what the regulation means, only a dispute as to whether Wright appeared to be disabled.[12]

When Wright applied for the disability benefits, she was still working as a rape counselor and her application indicated that she had earnings above the presumptive substantial gainful activity floor. Furthermore, her work was not in a sheltered environment and was no different from that of her co-workers. In the circumstances, we agree with the Secretary's contention that at the time of her application, Wright did not "appear to be disabled," and that there was no reason for the Secretary to "explain the requirements for receiving SSI benefits and give [Wright] a chance to file an application for them." 20 C.F.R. § 416.350 (1989).

While Wright notes that she was unrepresented and "psychiatrically impaired" at the time she initially applied for disability benefits, that circumstance did not change the facts as they appeared when she filed her application.[13]

## CONCLUSION

For the foregoing reasons we will affirm the order of July 28, 1989, granting the Secretary a summary judgment.

BECKER, Circuit Judge, concurring in the judgment.

I agree with the result reached in the court's opinion. I do so because I agree that part-time work, including work that largely includes being "on call," can constitute substantial gainful activity, and because I believe that the record supports the Secretary's finding that Ms. Wright was engaged in substantial gainful activity, albeit only marginally. However, I believe

---

**12.** As we have indicated, based on the Secretary's concession, we are exercising plenary review on this issue. We do note, however, that it would appear to raise factual questions subject to deferential review.

**13.** Although the parties discuss at length the question of when, after filing the original Title II application, Wright might have applied for supplemental security income benefits, we will

not. That is not the issue before us. What Wright urges is that the Secretary erred by not treating her original application under Title II as an application for the supplemental security income benefits. It is sufficient to observe that once she was represented by counsel it is difficult to see why she could not have made the application.

the case to be much closer than the court's opinion reflects, and I write separately because I fear that the opinion may create the impression that part-time work (yielding a certain minimum amount prescribed by the Secretary's regulations) automatically constitutes substantial gainful activity, thereby foreclosing meritorious disability claims of persons with serious mental illness who, by happenstance, are able to perform a specific marginal job.

## I.

I note preliminarily that, although I agree that there is sufficient evidence to support the Secretary's findings, I do not agree with the court's opinion insofar as it says that there is *no* evidence, *see ante* at 683, to support psychologist Levine's opinion that Ms. Wright was unable to perform substantial gainful employment. In fact, the only other professional to treat Ms. Wright, Dr. Stephanie Ward, also felt that she had serious mental disabilities that interfered with her ability to work. Dr. Ward, a psychiatrist, reported that the plaintiff displayed "chronic anxiety and angry, paranoid feelings, and claimed that she hated people." Dist. Ct. Op. at 5 (July 28, 1989). Dr. Ward concluded that Wright's ability to work and cope with other people was limited, despite the fact that she *"appeared* to function adequately" at her previous job. *See ante* at 677 (emphasis added).

Dr. Ward did not state that Ms. Wright functioned adequately at work, and there is no indication that Dr. Ward had sufficient information to make such an assessment. The person who did have that knowledge, Ms. Wright's supervisor at Women Organized Against Rape, stated that Ms. Wright's work was satisfactory. It is that opinion on which I would rely to conclude that the Administrative Law Judge's finding that Ms. Wright was engaged in substantial gainful activity was not against the substantial weight of the evidence. *See Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1950); *Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir.1988).

## II.

It is important to emphasize that neither the fact that Ms. Wright's earnings exceed the statutory guideline, 20 C.F.R. § 1574(b)(2)(vi) (1989), nor the fact that she worked enough hours to constitute more than part-time work, necessarily resolves the question whether she was engaged in substantial gainful activity. *See Kangas v. Bowen,* 823 F.2d 775 (3d Cir.1987); *Markham v. Califano,* 601 F.2d 533 (10th Cir. 1979); *Chiappa v. Secretary of Dept. of Health, Ed. and Welfare,* 497 F.Supp. 356, 360 (S.D.N.Y.1980); *Barats v. Weinberger,* 383 F.Supp. 276 (E.D.Pa.1974) (all holding that a finding of substantiality is necessary notwithstanding the statutory presumptions with regard to earnings or hours worked). The Secretary's own regulations indicate that an independent substantiality inquiry is appropriate:

> While the time you spend in work is important, we will not decide whether or not you are doing substantial gainful activity only on that basis. We will still evaluate the work to decide whether it is substantial....

10 C.F.R. § 404.1573(e). Among the factors that the Secretary considers is whether "you are doing work that involved minimal duties that make little or no demands on you and that are of little or no use to your employer...." *Id.* § 404.1573(b).

Evaluating Ms. Wright's work in light of this standard and the factfinding to which we owe deference, I cannot say that her on call duties had little or no value to her employer. Given her freedom from other responsibilities (children, school or dependent relatives), the demands made on Ms. Wright were not particularly onerous. Hence, she could perform her on call duties while doing "anything she wanted." *See ante* at 677. However, other people may not have been as free as Ms. Wright was to put down whatever they were doing when they were on call. Thus, I think that Ms. Wright was performing a job that commanded a (relatively) significant salary because, notwithstanding her disability, she

was able to perform a service—namely being available to get to the hospital to conduct an interview—that was in demand on the open market.

If there was evidence that Ms. Wright had performed the job inadequately, that she did not respond to her calls, or that she was incapable of interacting with the victims whom she did interview, I might vote differently, whether or not Women Organized Against Rape had continued to retain her. In such a case, the evidence might be, in effect, that payment over the statutory limit constituted an unwitting subsidy, making the situation more analogous to sheltered work (*see* 20 C.F.R. § 404.1574(a)(3)) than substantial gainful activity (*see* 20 C.F.R. § 404.1572(a)). Because, on the record before us, there is no evidence to that effect (Ms. Wright apparently performed the job in a satisfactory manner), I agree that the work that Ms. Wright performed for Women Organized Against Rape constituted substantial gainful activity. On these understandings, I concur in the judgment.