FILED
United States Court of Appeals
Tenth Circuit

April 26, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JAMES MARTINEZ,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

        Defendant-Appellee.

No. 10-5097
(D.C. No. 4:09-CV-00273-PJC)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES** and **McKAY**, Circuit Judges, **PORFILIO**, Senior
Circuit Judge.

---

Claimant, James Martinez, filed an application for supplemental security

income on February 28, 2007, alleging disability beginning March 20, 2005, due

to depression, post-traumatic stress disorder, and schizoaffective disorder.  His

claim was administratively denied and he requested a hearing.  An administrative

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

law judge (ALJ) conducted the hearing November 10, 2008, and on February 4, 2009, he issued a decision in which he concluded that Mr. Martinez was not disabled. Mr. Martinez filed an action in district court. The parties consented to the jurisdiction of a magistrate judge, who entered an opinion and order that affirmed the Commissioner's denial of benefits. This appeal followed, in which Mr. Martinez argues the ALJ did not follow the law in evaluating the medical evidence and that his adverse credibility finding is not supported by substantial evidence. We agree and we reverse and remand for further proceedings.

## Background

Mr. Martinez was 29 years old at the time of his hearing. The medical record begins in January 2007, when Mr. Martinez started weekly counseling sessions with Joel S. Leitch, a licensed professional counselor. The impetus for seeking treatment appears to have been depression, drug and alcohol use, and the stress of having witnessed the accidental shooting death of his brother a few years earlier.

On April 17, 2007, Denise LaGrand, a licensed clinical psychologist, performed a consultative mental status and diagnostic examination at the request of the agency. Following the examination, Dr. LaGrand prepared a report, which contains information conveyed by Mr. Martinez, test results, her diagnosis of schizoaffective disorder, and the effect of this impairment on his ability to function.

During the interview, Mr. Martinez told Dr. LaGrand "that he is applying for [benefits] based on major depression and post traumatic stress syndrome related to his brother's death." Aplt. App., Vol. II at 184. "He also reported that he hears voices and see[s] shadow people. He stated that 'there are two or three people. They tell me that I am schizophrenic and a psycho and that I should just finish myself off.' He has experienced this for a couple of years." *Id.* As to his auditory and visual hallucinations, he explained that "[the voices] have been present since before his brother's death, but worsened afterwards. They have decreased somewhat since starting Seriquel." *Id.* at 188. Regarding his family and social history, Mr. Martinez told Dr. LaGrand that he "lives in a house with his mother, brother and his daughter is there Sunday through Tuesday." *Id.* at 185. He also reported that "his friends don't talk to him anymore and he doesn't get along with most people." *Id.*

Dr. LaGrand diagnosed Mr. Martinez with schizoaffective disorder and wrote that the "[a]ffect observed during the exam was appropriate and consistent with his reported affect," *id.* at 186, which Mr. Martinez described as "depressed and angry," *id.* His "symptoms of depression include low energy, depressed mood most days, loss of interests, change in social relations, and sleep disturbance." *Id.* Although Mr. Martinez did not report any "difficulty with personal hygiene, dressing, preparing food, shopping, or driving," *id.* at 188, he told Dr. LaGrand "that he has a hard time sleeping because he can hardly shut his eyes, has almost

no energy, and sometimes doesn't shower for days," *id*. He described a "typical day . . . as 'get up, take meds, take nap, take meds, and try to go to bed.'" *Id.* The effect of his schizoaffective disorder on his ability to function was explained by Dr. LaGrand as follows: "[his] ability to maintain appearance is good[;] [h]is ability to be reliable is fair[;] [h]is ability to communicate and interact in a socially adequate manner is poor[;] [and] [h]is ability to function independently is good." *Id*. "His concentration is adequate. Persistence and pace were adequate." *Id*. at 189. She noted that "[t]he results of the exam appear to be a valid estimate of his overall functioning." *Id*.

About one month later, on May 21, 2007, a state disability medical consultant, Burnard Pearce, a licensed psychologist, completed a Psychiatric Review Technique (PRT) form and a Mental Residual Functional Capacity Assessment (MRFCA). Dr. Pearce's assessments were based solely on Dr. LaGrand's April 2007 examination, which was the only medical information in the file at that time. On the PRT form, Dr. Pearce noted that Mr. Martinez had moderate restrictions in activities of daily living, moderate difficulties in maintaining concentration, persistence, or pace, and marked difficulties in maintaining social functioning. In the consultant's notes section at the end of the form, Dr. Pearce reiterated certain information from Dr. LaGrand's report about Mr. Martinez's ability to function, including her assessment that his ability to be

reliable was fair, and his ability to communicate and interact in a socially adequate manner was poor.

The MRFCA completed by Dr. Pearce evaluates certain mental activities "within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis." *Id*. at 205. Dr. Pearce noted marked limitations in three areas: (1) the ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; and (3) the ability to interact appropriately with the general public. He noted no moderate limitations whatsoever, and all other boxes were checked as not significantly limited. As further explanation, Dr. Pearce wrote that Mr. Martinez "can perform simple tasks with routine supervision[,] can relate to supervisors and peers on a superficial work basis[,] cannot relate to the general public[,] [and] can adapt to a work situation." *Id*. at 207.

On July 26, 2007, Mr. Leitch, the licensed professional counselor who had been meeting weekly with Mr. Martinez over the previous seven months, completed a "Medical Source Opinion Of Ability To Do Work-Related Activities (Mental)," *id*. at 221, in which he rated Mr. Martinez's "capacity to sustain [certain work] activit[ies] over a normal 8-hour workday on a regular and continuous basis, week after week," *id*. The form defined a marked limitation as "unable to perform the task up to 66% of the time." *Id*. Mr. Leitch noted marked limitations in the following categories: (1) the ability to work close to others

without being distracted; (2) the ability to handle normal work stress; and (3) the ability to work with others without causing distractions.

The form defined a moderate limitation, as "unable to perform the task 33% of the time." *Id*. Mr. Leitch found that Mr. Martinez had moderate limitations in the categories of: (1) the ability to understand and remember detailed instructions; (2) the ability to maintain attention and concentration for extended periods in order to perform detailed tasks; (3) the ability to adhere to a schedule and maintain regular attendance; (4) the ability to perform at a consistent pace without an unreasonable number or length of rest periods; (5) the ability to interact appropriately with the public; and (6) the ability to accept instructions and criticism from supervisors.

A slight limitation was defined in the form as "able to perform the task 75% of the time or more." *Id*. Mr. Leitch noted the following slight limitations: (1) the ability to maintain attention and concentration for extended periods in order to perform simple tasks; and (2) the ability to maintain socially appropriate behavior and basic standards of neatness and cleanliness. In the comments section, Mr. Leitch wrote: "James' level of functioning is inconsistent. It is undeniable that he has significant emotional & cognitive issues which limit him, but at times there seems to be a measure of malingering also." *Id*. at 222. In a letter dated October 27, 2008, Mr. Leitch explained that he "factored out the

possible malingering," *id*. at 257, and his "observations [were based] purely on the significant emotional and cognitive issues that existed at the time," *id*.

Mr. Martinez became a patient of the Associated Centers for Therapy (ACT), in August 2007. He was treated by S. Scott Hanan, a physician, who diagnosed him with schizoaffective disorder. Subsequent treatment notes list the various medications prescribed by Dr. Hanan to relieve its symptoms, culminating with biweekly injections of Risperdal, which Mr. Martinez began receiving in May 2008. The following month, Dr. Hanan wrote: "James is doing well. Target symptoms are under good control. No new complaints." *Id*. at 211. In August, Dr. Hanan wrote: "James is doing well. Target symptoms are under good control. He has some minor breakthrough symptoms about three or four days before his shot is due, but he is tolerating them with no interference to his activities of daily living." *Id*. at 210. The final treatment note is from September, in which Dr. Hanan wrote: "James is doing well. Target symptoms remain under good control. . . . Continue medications unchanged." *Id*. at 259. The diagnosis of schizoaffective disorder was continued.

At his November 2008 hearing, Mr. Martinez testified that he cooks occasionally, does some vacuuming, watches television, but does not read. The last function he attended for his daughter was her basketball game, but he left early and had his mother drive him home because he "started to have a panic attack and anxiety attack." *Id*. at 39. He acknowledged that his counselor,

Mr. Leitch, urged him to go for walks and play disc golf, but when he tried to play golf with a friend, "[t]he voices started coming in pretty bad, so we've only played nine holes out of the 18 holes." *Id*. at 40. He has two friends, who come to visit him approximately once a week, but he sometimes has problems when they are there and he "lock[s] [himself] in [his] room while they're there." *Id*. "I just don't feel like seeing anybody." *Id*.

According to Mr. Martinez, he was getting relief from the Risperdal injections, however, there were side effects: "The first three days . . . I sleep a lot . . . probably four to five hours longer than normal. . . . The seven to ten days is . . . mediocre. . . . The last three to four days is [] very bad for me. The hallucinations will get stronger and [] the audio hallucinations get louder." *Id*. at 33-34.

The ALJ asked the vocational expert (VE) two hypothetical questions. The first asked her to assume that the individual "can only perform simple, repetitive tasks, can only have incidental contact with the public, . . . I mean . . . a janitor who cleans the office building in the evenings . . . but [doesn't] have to deal with [tenants] on a regular basis." *Id*. at 42-43. The VE testified that the individual could work as a janitor or packer. The ALJ then asked the VE to assume "an individual who could, due to the kind of complaints the claimant's testified hereto, would not be able to work on a regular basis. That is, would not be able to complete an eight-hour day, five days a week, on a regular basis." *Id*. at 43.

The VE testified there was no work available for an individual with those limitations.

In his decision, the ALJ found that although Mr. Martinez's schizoaffective disorder could cause the alleged symptoms, his allegations were not entirely credible. The ALJ further found that Mr. Martinez has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: perform simple, repetitive tasks and have only incidental contact with the public." *Id*. at 19. Because Mr. Martinez did not have any past relevant work, the ALJ moved to step five of the five-step sequential evaluation process and found that there were "jobs that exist in significant numbers in the national economy that [Mr. Martinez] can perform," *id*. at 24, and concluded that he was not disabled.

**Standard of Review**

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted). In other words, "[w]e consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Id*. (quotation omitted). "We review only the *sufficiency* of the evidence, not its weight[.]"

*Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,] [and] requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotation marks omitted).

## Discussion

### The Medical Opinions

We begin our analysis with the well-known and overarching requirement that an ALJ must consider every medical opinion in the record. 20 C.F.R. § 416.927(d). Opinions from treating sources such as a physician or licensed psychologist, must be given controlling weight as long as they are well supported and consistent with the other substantial evidence in the record. *Id.* § 416.927(d)(2).[1]

Opinions from examining psychologists are generally entitled to less weight than those of a treating source, and the opinions of nonexamining psychologists who have never seen the claimant are generally entitled to the least weight of all.

---

[1]    S. Scott Hanan, M.D., was Mr. Martinez's treating physician. But Dr. Hanan did not offer an opinion on Mr. Martinez's ability to work; instead, Dr. Hanan diagnosed him with schizoaffective disorder, prescribed medications, and tracked the success and/or failure of those medications to control the symptoms. Understandably, the ALJ did not say whether Dr. Hanan's opinion should be given controlling weight under § 416.927(d)(2), because he offered no opinion on how the disorder affected Mr. Martinez's ability to work. The ALJ did, however, use Dr. Hanan's treatment notes in formulating an adverse credibility determination, which we discuss *infra*.

*See* § 416.927(d)(1); Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2. *See also*

*Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004).

Last, the regulations require an ALJ to consider opinions from other

medical sources in determining the severity of the claimant's impairment and how

it affects his ability to function.  20 C.F.R. § 416.913(d).  *See also* Soc. Sec.

Ruling 06-03p, 2006 WL 2329939, at *3; *Frantz v. Astrue*, 509 F.3d 1299,

1301-02 (10th Cir. 2007).  SSR 06-03p states that "[o]pinions from these medical

sources, who are not technically deemed 'acceptable medical sources' under our

rules, are important and should be evaluated on key issues such as impairment

severity and functional effects, along with the other relevant evidence in the file."

*Id*. at *3.  We now turn to the medical opinions in this case.

**Dr. LaGrand**

We begin with Dr. LaGrand's opinion because a proper evaluation of her

opinion on remand may impact the ALJ's evaluation of the other medical

opinions.  Dr. LaGrand was the licensed clinical psychologist who, at the request

of the agency, examined Mr. Martinez in April 2007.  As a preliminary matter, her

opinion was generally entitled to more weight than Dr. Pearce's opinion, because

he did not examine Mr. Martinez.  *See* § 416.927(d)(1).  The other factors an ALJ

should have considered in determining the weight to be afforded Dr. LaGrand's

opinion are set out in § 416.927(d)(3)-(6), and include: (1) the supportability of

the opinion; (2) the consistency of the opinion with the record as a whole;

(3) whether the source is a specialist; and (4) any other factors that tend to support or contradict the opinion.

The error lies not in how the ALJ weighed Dr. LaGrand's opinion, but in his failure to include all of the limitations found by Dr. LaGrand without explaining why he rejected them, especially in light of his conclusion that her opinion was entitled to "great weight." Aplt. App., Vol. II at 23. To be sure, the ALJ's decision mentions several pieces of information from Dr. LaGrand's report. However, the ALJ ignored Dr. LaGrand's opinion that Mr. Martinez's "ability to be reliable is fair," *id*. at 188, and "[h]is ability to communicate and interact in a socially adequate manner is poor," *id*.

These were critical omissions. For example, "reliability is a factor in determining whether an individual can perform work for which he will receive remuneration." *Collins v. Apfel,* No. 98-2037, 1998 WL 781029, at *2 (10th Cir. Nov. 6, 1998) (unpublished), citing *Wright v. Sullivan*, 900 F.2d 675, 680 (3d Cir. 1990). Similarly, in formulating a claimant's RFC, an ALJ must consider the limitations from acceptable medical sources such as Dr. LaGrand, concerning the ability to "respond appropriately to supervision, co-workers and work situations." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *6.

To be sure, the ALJ may have had his reasons for giving portions of Dr. LaGrand's opinion "great weight," Aplt. App., Vol. II at 23, but then disregarding other, probative portions of her opinion. However, before doing so,

the ALJ was required to discuss why he ignored this evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (holding that "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significant probative evidence he rejects"). Nor is an ALJ "entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson*, 366 F.3d at 1083. *See also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (remanding the case for further proceedings where the ALJ failed to explain why he "adopted some of [the limitations expressed by a mental health professional] but not others").

The Commissioner argues that the ALJ's failure to acknowledge the limitations in Dr. LaGrand's report is akin to the ALJ's failure to consider a therapist's medical opinion in *Wilson v. Astrue*, 602 F.3d 1136 (10th Cir. 2010), which we concluded was not error. We agree with the Commissioner that *Wilson* states the familiar proposition that an ALJ is not required to discuss every piece of evidence in the record. However, our conclusion in *Wilson* was based on the fact that the therapist's opinion was cumulative with respect to the undisputed evidence that the claimant "has serious long-term mental health limitations that clearly impact her life." *Id.* at 1148. By contrast, those portions of Dr. LaGrand's opinion that the ALJ failed to discuss were significantly probative and did not repeat any of the other medical evidence mentioned by the ALJ.

-13-

In his answer brief, the Commissioner concedes that Dr. LaGrand opined that Mr. Martinez "had poor ability to interact socially." Aplee. Answer Br. at 21. He argues, however, that this did not require the ALJ to find any significant limitations in Mr. Martinez's "ability to interact with co-workers and supervisors," *id*. at 22, because once he started receiving treatment from Dr. Hanan, his "mental condition began to improve," *id*. While Dr. Hanan did report progress in treating the target symptoms of the schizoaffective disorder, he never said that the medication improved Mr. Martinez's ability to interact socially, or anything about improvements in his overall mental condition or the ability to function in a work setting. More to the point, the ALJ did not explain that he was rejecting Dr. LaGrand's opinion because it conflicted with Dr. Hanan's notes.[2] As such, the Commissioner's argument is an improper post hoc attempt to justify the decision. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (holding that it is error to "rely[] upon certain analytical revisions offered on judicial review [because] [a]ffirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process").[3]

---

[2]    The error is compounded by the fact that the ALJ said that he was affording Dr. LaGrand's opinion "great weight." Aplt. App., Vol. II at 23.

[3]    It makes little sense to discuss Dr. Pearce's opinion separately except to say that in light of our rulings concerning the ALJ's errors, Dr. Pearce's opinion "will [not] bear the weight placed upon it by the ALJ." *McGoffin v. Barnhart*,

(continued...)

**Mr. Leitch**

Mr. Leitch is the licensed professional counselor who saw Mr. Martinez on a weekly basis over a seven-month period.[4] His July 2007 opinion is set forth in an agency-supplied form concerning the effect of Mr. Martinez's mental impairments on his ability to work. We will not tarry on this issue. The ALJ made a fundamental legal error by applying the law concerning treating sources to Mr. Leitch's opinion, when Mr. Leitch cannot be considered a treating source because he is not an acceptable medical source. *See* §§ 416.927(d) and 416.913(a).

There are several items in the ALJ's decision that lead us to conclude that he treated Mr. Leitch as a treating source. In the paragraph immediately preceding his discussion of Mr. Leitch's opinion, the ALJ recited the rules regarding treating sources, and then wrote that he "gives little weight to the opinion of Mr. Leitch, the claimant's *treating* mental health counselor, as he apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant[.]" Aplt. App., Vol. II at 23 (emphasis added). Moreover, the ALJ noted that "the course of *treatment* pursued by [Mr. Leitch] has not been consistent with

---

[3](...continued)
288 F.3d 1248, 1253 (10th Cir. 2002). On remand, and after proper consideration of the opinions from Dr. LaGrand and the other sources, the ALJ will need to explain why he accepted or rejected these other opinions in favor of Dr. Pearce's opinion, who was a nonexamining medical source.

[4]     For purposes of this order and judgment, we will assume, without deciding, that licensed professional counselors should be considered "other sources," as defined in § 416.913(d).

what one would expect if the claimant were truly disabled, as has been reported." *Id*. (emphasis added).

The factors that an ALJ must consider in evaluating the opinions of other sources are set forth in SSR 06-03p, and include: (1) the length of time the source has known the claimant and how frequently the source has seen the claimant; (2) the consistency of his opinion with other evidence; (3) whether there is there relevant evidence to support the opinion; (4) how well the opinion is explained; (5) the source's qualifications; and (6) any other factors that tend to support or detract from the opinion. *Id*. at *4-5. *See also* § 416.927(d).

To be sure, the ALJ's failure to mention either SSR 06-03p or § 416.927(d) is not necessarily fatal; what is fatal however, is that the evidence cited by the ALJ in giving Mr. Leitch's opinion "little weight," Aplt. App., Vol. II at 23, reveals that he did not have the relevant factors in mind, and more to the point, his findings are not supported by substantial evidence. As one example, Mr. Leitch's opinion appears to be consistent with Dr. LaGrand's opinion, whose opinion the ALJ found was entitled to "great weight." *Id*.

We are also mindful that our role on appeal is limited to deciding whether the correct law was applied and whether the ALJ's decision is supported by substantial evidence. As such, it would be improper for this court to reanalyze Mr. Leitch's opinion under the correct law because that would amount to reweighing the evidence and substituting our judgment for that of the

-16-

Commissioner, which we cannot do. *See Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quotation omitted) (holding that "[w]e consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence . . . but we will not reweigh the evidence or substitute our judgment for the Commissioner[]"). *See also Robinson*, 366 F.3d at 1084 (recognizing that we evaluate the ALJ's decision "solely on the reasons stated in the decision").[5]

## The Credibility Analysis

Mr. Martinez argues that the ALJ did not apply the correct legal standards in assessing his credibility, and alternatively, even if he did apply the correct law, his adverse credibility determination is not based on substantial evidence. We agree the determination is not supported by substantial evidence.

In cases where there is an underlying mental impairment that could reasonably be expected to produce the symptoms described by the claimant, an ALJ is required to evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. 20 C.F.R. § 416.929(c). If the claimant's statements about the limiting effects of the symptoms are not substantiated by

---

[5]    The ALJ's failure to follow the law was not harmless error, because we cannot "confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005).

objective medical evidence,[6] the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire record.  *Id.*  The kinds of evidence and factors the ALJ should consider in assessing credibility include: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the symptoms; (3) the factors that precipitate and aggravate the symptoms; (4) the type, effectiveness, and side effects of medications taken to alleviate the symptoms; (5) the treatment, other than medications, the claimant received for relief of the symptoms; (6) the other measures used to relieve the symptoms; and (7) any other factors.  *Id.* at (c)(3)(i-vii).  We defer to an ALJ's credibility findings when they are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).

In his decision, the ALJ found that Mr. Martinez's "statements about his impairments and their impact on his ability to perform activities of daily living and basic functions are not entirely credible in light of discrepancies between [his] alleged symptoms, and objective documentation in the file."  Aplt. App., Vol. II at 22.  He then cited Mr. Leitch's opinion that he "suspected [Mr. Martinez] was malingering."  *Id.* at 23.  He also noted Dr. Hanan's opinion that the bi-weekly

---

[6]    On remand and under the correct analysis of the medical evidence, the ALJ might conclude that Mr. Martinez's statements about the limiting effects of his symptoms are supported by the objective medical evidence, thus obviating the need for a credibility assessment.

Risperdal injections were "relatively effective in controlling [his] symptoms," *id.*, and found this evidence was "inconsistent with his testimony of extreme mental problems." *Id.* The ALJ also wrote that Mr. Martinez "is able to play disc golf," *id.*, and "has two good friends, which would indicate that he is able to interact socially to a certain extent," *id.* Last, the ALJ found that Mr. Martinez "is able to care for his daughter at home, which can be quite demanding both physically and emotionally, without any assistance." *Id.*

We acknowledge that the ALJ was not required to "totally accept or totally reject" Mr. Martinez's statements. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4. However, the ALJ was required to explain why, after having said that Mr. Leitch's opinion was given only "little weight," Aplt. App., Vol. II at 23, he selectively used portions of the opinion to support his adverse credibility determination. *See Robinson*, 366 F.3d at 1083 (holding that an ALJ is not "entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability").

Further, we acknowledge that Dr. Hanan's notes indicate that the Risperdal injections were relatively effective in controlling Mr. Martinez's symptoms; his notes, however, also state that there were breakthroughs in the last few days of the two-week cycle, which is consistent with Mr. Martinez's testimony. More to the point, although Mr. Martinez testified about the side effects of the medication and

this is a factor the ALJ should have considered in his credibility assessment, the ALJ's decision never mentions this testimony.

Last, there is nothing in the record to support the ALJ's finding that Mr. Martinez cares for his daughter without help from others, or that providing such care is "quite demanding both physically and emotionally." Aplt. App., Vol. II at 23. While it appears that Mr. Martinez at some time played disc golf with a good friend and has a couple of good friends, we are not convinced that this means Mr. Martinez's testimony is unworthy of belief, particularly in light of the objective evidence concerning the effect of his limitations on his ability to work and that "sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

Because the ALJ did not follow the law in evaluating the medical evidence and because his adverse credibility determination is not supported by substantial evidence, the judgment of the district court is REVERSED and the case is REMANDED to the district court, with instructions to remand to the Commissioner for further proceedings in accordance with this order and judgment.

Entered for the Court

John C. Porfilio
Senior Circuit Judge

-20-